GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. LULA S. FORD ET AL.

Decided November 1, 1899.

### 1.  Practice on Appeal—Bill of Exceptions—Presumption.

Where a bill of exceptions to the action of the trial court in refusing to submit a case to the jury upon special issues does not disclose at what stage of the trial the submission was requested, it will be presumed that the request came after the court had already submitted the case.

### 2.  Charge—Harmless Error.

Appellant can not complain that a given paragraph of the trial court's charge presented an issue not raised by the evidence, where that issue was one that operated in appellant's favor.

### 3.  Same—Definition of Statutory Terms—Request Necessary.

An assignment of error to the failure of the charge to define what was intended by the words of the statute, "control, command, and direction," in the law as to fellow servants, is not well taken where there was no request for more explicit instruction on that point.

### 4.  Assignment of Error—Evidence—Opinion.

An assignment of error to the testimony of certain witnesses as to the rate of speed a freight train could be safely run over the track in question, as being mere opinion, is not well taken where it does not bring into question the qualifications of the witnesses to speak on the subject.

### 5.  Evidence—Opinion—Expertness Not Requisite.

It does not require an expert to testify that there are steep grades and a sharp curve in a railroad track at certain places, as these are matters of fact and not of opinion.

### 6.  Same—Action for Death—Son Supporting Father.

Evidence that a married son contributed a given sum monthly to the support of his mother, with whom his father and others of the children resided, warrants a verdict in the father's favor for the son's death, as showing that the son contributed to his support, and that he had reasonable expectations that this would be continued.

APPEAL from Bexar.  Tried below before Hon. ROBERT B. GREEN.

*Upson & Newton,* for appellant.

*Robt. L. Ball* and *I. H. Burney,* for appellees.

JAMES, CHIEF JUSTICE.—The nature of the case is fully exhibited in the opinion on the former appeal, 46 Southwestern Reporter, 77. Plaintiffs are the wife, daughter, father, and mother of Charles E. Ford, the fireman alleged to have been killed through defendant's negligence. The form of negligence upon which the case was tried and submitted was in respect to the speed at which the engine was being run.

*Conclusions of Fact.*—We conclude that there was testimony showing negligence in the rate of speed at which the engine was run, in view of the condition of the track at the place of the accident; that such negligence caused the engine to be derailed and Ford to be killed, and that there was no contributory negligence on his part.  Also, that the evidence

showed that Ford had contributed to the support of his father, as well as to that of the other plaintiffs, and that the father sustained a pecuniary loss by his death, as did also the other plaintiffs. We make this finding is view of the assignment asserting that there was no testimony to support the item in the verdict of $200 in favor of the father.

*Conclusions of Law.*—No error appears to have been committed by the refusal of the court to submit the case by special issues. The case was tried before the amendment of the recent Legislature, but the bill of exceptions does not disclose at what stage of the trial such submission was requested, and we must presume in favor of the court's ruling, that it came after the court had submitted the case. Railway v. Williams, 52 S. W. Rep., 89; Railway v. Cody, 20 Texas Civ. App., 520.

There is no merit in the subject of the seventh and eighth assignments. The claim is that the court submitted an issue upon which there was no evidence, viz., whether or not the deceased had control of the speed of the engine, or was in any way responsible therefor. The court, after certain definitions, charged the jury that if defendant negligently ran the engine at an excessive and dangerous speed at the time and place of the accident, and that such excessive speed, if any, was the cause of Ford's death, to find for plaintiffs, unless they found for defendant under subsequent paragraphs of the charge. Then the charge proceeds to give the exceptions upon which they would find against plaintiffs. In paragraph 6 the jury were charged not to find for plaintiffs if it had been the custom to so run the train at that place, and Ford knew of such custom, or by the exercise of ordinary care could have known of it. In paragraph 7 they were charged not to find for plaintiffs if Ford had, in any manner, control over the rate of speed and was in any way responsible therefor. The jury must have found that neither state of facts referred to in said paragraphs existed, for if either, the verdict must have been for defendant. The charge in paragraph 7 was in its nature favorable to defendant. The burden of proof upon such issue, if any such issue had existed, was upon the defendant, and if the jury considered such issue and found that Ford did not have any control of the speed of the engine, then their finding was consistent with there being no testimony whatever on the subject. The party that could have complained of the charge as being upon an issue not in the case, would have been the plaintiff, had a contrary verdict been rendered. As the case was submitted, we do not see how a jury could have been confused, or misled from any other issue, by the presence of paragraph number 7 in the charge. They were instructed to find against plaintiff either in the event Ford had control of the speed of the engine, or in the event it had been the custom to run the engine at dangerous speed at that place, and he knew or should by ordinary care have known of it; and these contingencies were presented to the jury in separate and distinct paragraphs.

The ninth and tenth assignments are that the court failed, in its charge upon the law of fellow servant, to define what was intended by the words of the statute, "control, command, and direction," and erred in its charge allowing the jury to find that the engineer had control, superintendence, command, and direction of the deceased fireman, when the evidence established that the engineer had no charge, control, or direction of him. Answers to these positions are that the charge was unquestionably the law as far as it went, and no more explicit instruction was asked, and there was testimony showing the charge, control, and direction of the engineer over the fireman.

The fifth assignment claims that the testimony of certain witnesses,— in effect that the engineers of defendant had superintendence, control, direction, and command over the firemen; that they had such control at the time Ford was killed; that they had authority to and did direct firemen in the discharge of their duties,—was erroneously admitted over the objection that such statements were conclusions only. We consider this assignment as without force; and the same is to be said of the fourth assignment, which presents similar objection to the testimony of witnesses Cox and Gibson, that a reasonably safe rate of speed for operating a freight train over the track at the place in question would be from ten to fifteen miles an hour, and that a rate above that would be dangerous. The assignment does not bring into question the qualification of these witnesses to speak upon the subject, and it is difficult to perceive in what other form or manner such fact could have been brought in evidence.

The third assignment of error presents similar objections to the testimony of several witnesses, "that there was a steep grade coming from the west, and at the foot of Eldridge Hill it was a steep up-grade going east; that there was a sharp curve at the foot of Eldridge Hill, or rather a sharp sudden reverse curve." The assignment states "that these witnesses had shown that they had been firemen on locomotives, and knew nothing about the construction of railway tracks, and they did not state the facts giving approximately or otherwise the degree of the curves, length of radius, or percentage of grade, and that their testimony was simply a statement of their conclusions, without stating the facts upon which their opinion was based." The matters indicated by this assignment were not matters of opinion, but facts. It is plain that the facts above stated could be testified to by any person having common powers of observation. These witnesses were railroad men and were competent to speak concerning such mere physical facts, which did not involve scientific or expert knowledge.

The thirteenth assignment is that there was error in allowing Ford's father any recovery, there being no testimony that Ford ever contributed anything to his support, or that he had any reasonable expectation of such contribution. The testimony was that deceased and wife resided with his father and mother. who had eight other children. That deceased, since his marriage, had contributed about $60 per month to his

wife and child, and about $40 per month to his mother, out of which his wife and mother jointly paid the expenses of the whole family. We think this shows the son contributed to the support of the father, and that the latter had reasonable expectation of its continuance.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.