GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. EDWARD P. HUGHES ET UX.

Decided November 1, 1899.

1. **Expert Witness—Railway Employes.**

It is not error to admit the opinion of witnesses as to the safety or danger in using blocked and unblocked switches, where they have been for many years in the service of railroads, and engaged in branches thereof where they would be acquainted with the manner of constructing and using frogs and switches.

2. **Master and Servant—Railway Company—Warning Inexperienced Switchman.**

Where a railway knows, through its yardmaster, that one employed as a switchman is inexperienced, the duty is devolved upon it to warn him of the particular dangers of his employment, and this duty is not dependent upon any request by the servant.

3. **Same—Knowledge of Danger.**

That a switchman knew merely that the guardrails and frogs were unblocked will not preclude a recovery for his death from being caught therein if he did not know the danger of their use.

4. **Damages for Death—Community Property.**

Damages recovered jointly by the parents for the death of a child, being community property, need not be apportioned as between the plaintiffs.

5. **Same—Parent and Child.**

The measure of damages in an action by parents for the death of their son is a sum equal to the pecuniary benefits they had a reasonable expectancy of receiving from him, and the jury, in estimating such sum, can not be held to mathematical certainty by statistics or calculations of life expectancies. A verdict for $5000 in this case held not excessive.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHALL.

*Beall & Kemp,* for appellant.

*Millard Patterson* and *C. N. Buckler,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellees, the parents of W. E. Hughes, instituted this suit to recover of appellant damages resulting from the death of their son, who was killed while in the employment of appellant. The trial resulted in a verdict and judgment for appellees in the sum of $5000.

The first and second assignments of error complain of the admission of testimony of Michael Marmon and Con Fox, in regard to the rela-

tive safety of blocked and unblocked switches, on the ground that they did not qualify themselves as experts. Marmon testified that he had been a railroad man for twenty-seven years, first as a section hand or trackman, next as section foreman, and last as flagman at a street crossing; that he had assisted in keeping tracks in repair in switchyards, but had not done much switching; that he had worked in yards where switches were blocked and unblocked; that the first named are safest, and that if properly blocked, it is not possible for a brakeman to get his foot fastened. Fox testified that he had been a section hand for thirty years, and was experienced in regard to the construction of frogs, switches, and yard arrangement. Both of the men had been for years in the service of railroads, and engaged in that branch of the railway service where they would be acquainted with the mode of construction of frogs and switches, and would be in a position to give sound opinions as to the relative safety of blocked and unblocked switches. Railway v. Thompson, 75 Texas, 504.

The court charged the jury, among other things, as follows:

"If you believe from a preponderance of the testimony in this case that the deceased, William E. Hughes, while in the service of the defendant, and while in the discharge of his duty as switchman, and while attempting to couple cars in the yard of the defendant at El Paso, Texas, and that he was then in the exercise of reasonable care for his own safety, got his foot caught in an open space between the rails of the defendant's track, commonly called a frog, and that before he could extricate himself he was run upon and so injured by the moving cars that he died from such injury, and if you further believe from a preponderance of the testimony that said frog was unblocked at the point in the same where deceased's foot was caught, and that his foot being so caught in said frog, and his consequent injury and death was due to the fact that said frog was unblocked, and that under all the facts and circumstances in evidence in this case said defendant was guilty of negligence as that term is defined in the fourth paragraph of this charge, in allowing said frog to be and remain unblocked at the point where deceased's foot was caught, if caught, and that by the exercise of ordinary care upon its part defendant could and would have so blocked said frog as to have prevented such accident and injury, and if you further believe from the evidence that the plaintiffs are the father and mother of the said William E. Hughes, and that they have been damaged pecuniarily by his death, then and in that event you should find for the plaintiffs.

"6. Unless you believe from a preponderance of the testimony and under all the facts and circumstances in evidence in the case that the defendant was guilty of negligence in failing to block the frog mentioned in the testimony at the point where the foot of deceased was caught, if caught, then in that event you should find for the defendant so far as a failure to have said frog blocked is concerned.

"7. The plaintiffs in this case have alleged in their petition that at the time William E. Hughes was employed as a switchman he was inexperi-

enced and had no knowledge that the frogs were not blocked and did not know of the danger arising from unblocked frogs; and that defendant knew these facts and failed to warn him of such danger, and they allege that such failure to so warn him was negligence. As to this issue you are instructed as follows:

"The general rule of law is that when one person enters the service of another, he thereby assumes the risks, hazards, and dangers ordinarily incident to the service undertaken, but to this general rule there are exceptions, as for instance where the servant is inexperienced as to the service undertaken and ignorant of the hazards, risks, and dangers incident thereto, and if such hazards, risks, and dangers are not reasonably indicated by the nature of the work to be done, and if the master, knowing of such risks and hazards, and also knowing of the ignorance and inexperience of the servant, fails to warn him of such risks, hazards, and dangers, and the servant is injured while performing such service, then the master is liable. Now in this case, if you believe from the evidence that at the time the said Hughes was employed as a switchman by defendant he was inexperienced in the matter of coupling, uncoupling, and switching cars, and was ignorant of the danger, if any, arising from and incident to the matter of coupling and uncoupling cars in the yard of defendant where the frogs and switches were not blocked, and that the defendant knew, at the time it employed the said Hughes as a switchman, that he was inexperienced in the service of coupling and uncoupling cars, and that the defendant knew of the danger, or ought to have known of the danger, in coupling and uncoupling cars arising from unblocked frogs, if it was attended with danger, then it was the duty of defendant to have warned the said Hughes against the danger, if any, arising from unblocked frogs and switches, and to have put him upon his guard against such danger before putting him to work at switching, coupling, and uncoupling cars in its yards; and if you believe from the evidence that the said defendant did not so warn him and put him upon his guard and he was in consequence killed, while in the exercise of reasonable care on his part, then you should find for the plaintiffs.

"8. If you believe from the evidence that at the time the said William E. Hughes was employed as a switchman by the defendant he was inexperienced in the service of switching cars, and you further believe from the evidence that he had knowledge of the fact that the frogs and switches in the defendant's yard were not blocked, you are instructed that such knowledge would not, as a matter of law, constitute knowledge to him of the danger arising from the fact that the frogs and switches were not blocked, if any such danger existed, but the fact as to whether or not he knew and appreciated the danger, if any, arising from unblocked frogs and switches, is a question of fact for you alone to determine, and it is your duty to determine it from all the evidence, facts, and circumstances in the case, and in determining that fact you would be authorized to take into consideration his inexperience in such matters, if you should find that he was inexperienced, the length of time he had

been at work, his opportunity to become acquainted with such danger, if any, the character of work required of him as a switchman, as well as all the other facts and circumstances in the case. If you should find from the evidence that the said William E. Hughes did not know and realize the danger arising from unblocked frogs and switches, and that at the time he was employed and put to work as a switchman he was inexperienced in the business of switching, and that the said defendant knew that fact and also knew of the danger arising from unblocked frogs and switches, if any, or ought to have known of such danger, and that the said defendant failed and neglected to warn said Hughes as to such danger, so as to put him upon his guard, and that in consequence thereof his foot became fastened in a switch or frog, and that he was run upon by the cars and injured, and that he was exercising due care at the time, and that he died of such injury, and the plaintiffs thereby sustained pecuniary loss, then you should find for the plaintiffs; but on the other hand, if you should find from the evidence that the said Hughes had knowledge of the fact that the frogs and switches in the yard of the defendant were not blocked, and that he understood and appreciated the danger arising from unblocked frogs and switches, and that he accepted such employment with such knowledge, or continued in such service after acquiring such knowledge, then you are instructed that he assumed all risk arising from unblocked frogs and switches, although he was inexperienced and was not warned by the defendant, and if you should so find, your verdict should be for the defendant.

"9. As to the question whether or not defendant knew at the time it employed the said Hughes as a switchman that he was inexperienced in such work, you are instructed that the knowledge of the yard master who employed him would constitute knowledge on the part of defendant.

"10. On the question of contributory negligence you are instructed as follows: That if you believe from the evidence that the deceased in the prosecution of his business as switchman, by the use of such care and observation as an ordinarily prudent man, considering the nature and dangers of his employment, the length of time he had been employed and his inexperience, if inexperienced, ought to have used, could have seen and avoided the danger of unblocked frogs, but that he did not use such care and observation, and that, as a proximate result of his failure to use such care and observation, he was injured, or if his failure to use such care and observation to discover and avoid the danger contributed to his injury, then you will find for the defendant."

The third assignment of error attacks the fifth section of the charge above copied, on the ground that it was given without qualification as to patent and obvious dangers, which it was the decedent's duty to avoid. In the section criticised the jury were informed that, in order to recover, deceased must have been in the exercise of ordinary care for his safety, and the section is sufficient, taken in connection with succeeding passages in the charge which supply any omissions in the section in question.

The fourth, fifth, and sixth assignments of error attack the seventh

and eighth sections of the charge on the ground that "mere knowledge" of a want of experience in the employe in a general line of employment is not sufficient to call for warning as to a particular danger, and that appellant would not be liable unless it knew that deceased did not appreciate the danger of the employment. The objections are without merit. The testimony clearly demonstrated that deceased had been in the employ of appellant about two hours at the time of his death, that he was inexperienced and unacquainted with the dangers of his employment, and that appellant knew of his inexperience. The rule is: "If there are any dangers, either latent or patent, of which the master has knowledge, either actual or presumed, which the employe, either from his youth, inexperience, want of skill, or other cause, does not, or is presumed not to understand or comprehend, they must be made known to him by the master; and this duty of the master is the same as to the machinery or appliances used or to be used by him. It is presumed that the master or the person placed in charge of a hazardous business or department thereof is familiar with the dangers, latent and patent, ordinarily accompanying the business which he has in charge. The obligation is not discharged by informing the servant generally that the service in which he is engaged is dangerous; and more especially is this so when the servant is a person who neither by experience nor by education has, or would be likely to have, any knowledge of the perils of the business, either latent or patent. In such case the servant should be informed, not only that the service is dangerous, but of the perils of a particular place, and the particular or peculiar dangers that attend the service, if any." Bailey, Mast. and Serv., pp. 111, 112. In the case of Railway v. Callbreath, 66 Texas, 526, the above rule as enunciated in Wood on Master and Servant, 714, is quoted and approved by the Supreme Court. Ordinarily a person who accepts employment from another assumes all ordinary risks incident thereto, and can not recover for injuries resulting therefrom, and doubtless in the absence of knowledge on the part of the employer of an applicant for employment coming within the exceptions furnished by youth, inexperience, or want of skill, the employer could assume that he was not within the exceptions, and would not be under obligations to warn him of the dangers incident to his employment; but in this case appellant knew deceased was inexperienced, and its yardmaster recognized the necessity of instructing him as to the work, but for some reason failed to do it. It follows that it was not error to refuse the special charge in regard to the presumption in which appellant might indulge from the physical vigor and mental ability of deceased. Appellant knew of the inexperience of deceased.

Neither was it error to refuse the special instruction in regard to the defect in the frogs and guardrails being visible and obvious. As aptly said by the Supreme Court of Arkansas, in the case of Davis v. Railway, 13 Southwestern Reporter, 801: "Service about the unblocked rails was attended with danger, and the knowledge of the fact that the rails were unblocked did not necessarily imply knowledge of the attendant danger."

Under the facts of this case it would have been error to have instructed the jury that mere knowledge of the fact that the frogs were unblocked, upon the part of deceased, would preclude a recovery, when the test should have been, did deceased know the defects in the track, and did he also know that the defects rendered his employment dangerous? Railway v. Lempe, 59 Texas, 19; Railway v. Watts, 64 Texas, 568; Railway v. McNamara, 59 Texas, 257; Cook v. Railway (Minn.), 24 N. W. Rep., 512; Mayes v. Railway (Iowa), 14 N. W. Rep., 340.

The special charges embodied in the ninth and tenth assignments of error were given in the charge of the court so far as they embodied law applicable to the facts, and it was not error to refuse them.

It is not the law of this State, nor, so far as we know, of any other, that a master is under no obligation to warn an inexperienced servant of the dangers of its track or appliances, unless such warning is sought by such servant. With the knowledge of the inexperience of the servant, the obligation to warn him of danger connected with his employment arose, such duty arising from the fact of inexperience, and not being dependent on any request made by the servant.

This suit was instituted by the parents of deceased, there being no other interested parties, and all the damages recoverable would be community property, and there was no reason for finding a separate amount for each. Bramswig v. White, 70 Texas, 512; Railway v. Sciaca, 80 Texas, 355; Railway v. Mechler, 29 S. W. Rep., 202.

The court instructed the jury: "In case you find for the plaintiffs, the amount they would be entitled to recover would be a sum equal to the pecuniary benefit, if any, which they would have had a reasonable expectation of receiving from said William E. Hughes had he not been killed by defendant's cars, and in estimating such sum, if any, the jury may consider under the evidence before them the age of the deceased at the time of his death, his habits of industry, economy, and sobriety, his actual ability and capacity for earning money, as well as the probable duration of his life, together with the ages and probable duration of the lives of the plaintiffs at the time of his death." Appellant objects to the measure of damages being fixed at a "sum equal to the pecuniary benefit, if any, which they would have had a reasonable expectation of receiving," etc. This is stated to be a proper measure of damages in cases where no legal obligation had rested on decedent to contribute to the support of the persons suing as in this case. Railway v. Kindred, 57 Texas, 491; Railway v. Harrington, 62 Texas, 597; Railway v. Lee, 70 Texas, 496; Winnk v. Railway, 74 Texas, 32.

The deceased, an inexperienced young man, whose inexperience was known to appellant, applied for and obtained from the appellant employment in its switch yard in El Paso. About two hours after his employment, deceased, while performing the duties incumbent upon him, got his foot fastened in an unblocked frog, and was run over and crushed in such a manner by appellant's cars that he died. It was in proof, and we find, that unblocked frogs and guardrails are dangerous to persons work-

ing in switch yards, and that this was unknown to deceased, and was known to appellant, but it gave no warning to deceased, although it knew him to be inexperienced. The evidence was sufficient to establish negligence on the part of appellant, and that deceased was not guilty of contributory negligence.

The verdict is not excessive. There was proof to the effect that appellees received about $200 per annum from deceased; that he was young and healthy; that the life expectancy of the mother was over sixteen years, and that deceased had contemplated building a home for his parents in Texas. "We know of no authority for reducing to a mathematical certainty the amount of the damages that a jury may find in such cases as this. * * * However useful such evidence may be, courts can not hold juries bound by statistics or calculations of life expectancies." Railway v. Lester, 75 Texas, 56; Railway v. Henry, 75 Texas, 220. In the Lester case the verdict in favor of the mother was for $4200.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.