GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. MRS. C. F. MITCHELL ET AL.

Decided January 8, 1908.

**1.—Death—Fireman—Movement of Engine—Signal.**

While a locomotive fireman was upon the running board of the engine for the purpose of blowing out the boiler in obedience to the orders of the engineer, the engine was started for the purpose of making a coupling; the bell was not rung and no other signal or notice was given to the fireman of the intention to make the coupling just at that moment; the jar of making the coupling caused the fireman to fall and receive injuries from which he died. Held, the issue of negligence on the part of the defendant in starting the engine and making the coupling without giving some signal or notice to the fireman, was an issue for the jury under all the circumstances in evidence, and this, although the fireman knew that the engine had gone to that place for the purpose of making the coupling.

**2.—Railroads—Moving Trains—Signals.**

In a suit for damages for the death of a railroad fireman caused by starting the engine and making a coupling while the fireman occupied an insecure position, without ringing the bell or giving other notice of the intention to make the coupling just at that time, charge submitting the issues considered, and held not subject to the several objections urged against it.

**3.—Death—Negligence—Evidence.**

In a suit for damages for the death of a fireman caused to fall from a locomotive by the jolt in making a coupling, evidence considered, and held sufficient to support the finding of the jury that the defendant was guilty of negligence.

**4.—Railroads—Movement of Engines—Expert Testimony.**

Whether or not a locomotive under given conditions would start of its own motion or would require steam to start it, is a matter about which persons not experienced in the operation of engines cannot be presumed to have knowledge, and therefore expert testimony should be admitted.

**5.—Evidence—Res Gestae.**

A statement made by the deceased fifteen or twenty seconds after the accident as to the cause and manner of his injury, was res gestae.

**6.—Death—Damages not Excessive.**

In a suit by the widow and two minor children for the death of the husband and father, evidence considered, and held that a verdict in favor of the widow for $10,000, and in favor of the two minor children for $7,500 each, was not excessive. Justice Neill dissenting.

Appeal from the 57th District Court, Bexar County.  Tried below before Hon. A. W. Seeligson.

*Newton. & Ward, Teagarden & Teagarden* and *Baker, Botts, Parker & Garwood*, for appellant.—The undisputed facts in this case show that Mitchell knew, and was bound to have known, when the engine stopped, what the purpose of the stop was, and that the engine would, in a moment, move forward to make the coupling. It was, therefore, unnecessary to give him warning of what was about to happen, and it was error to refuse to take this issue from the jury, as the giving of this charge would have done.  It is error for the court, in the charge, to treat as doubtful that which is clearly established.  Denham v. Trinity County Lumber Co., 73 Texas, 84; Texas & N. O. Ry. v. Crowder, 63 Texas, 502; Texas & Pac. Ry. v. Hightower, 12 Texas Civ. App., 44; St. Louis & S. F. Ry. v. Bussong (Texas Civ. App.), 90 S. W. Rep., 73.

A mere surmise is not sufficient to create an issue of fact:  Lovett v. Gulf, C. & S. F. Ry., 79 S. W. Rep., 514 (Texas Sup. Ct.); Crawford v. Houston & T. C. Ry., 89 Texas, 94; Sabine & E. T. Ry. v. Dean, 76 Texas, 75; Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 61; Choat v. San Antonio & A. P. Ry., 90 Texas, 82.

There is in law no evidence to support an issue when the facts and circumstances leave the issue to be determined a mere matter of conjecture.  Fuller v. Ann Arbor Ry. (Mich.), 104 N. W. Rep., 414; 40 Am. & Eng. Ry. Cases (N. S.), 594; Bowen v. Illinois Cent. Ry. (U. S. C. C. A.), 39 Am. & Eng. Ry. Cases (N. S.), 274.

Presumptions must yield to positive and uncontroverted proof. Gulf, C. & S. F. Ry. v. Rowland, 90 Texas, 365; Denham v. Trinity County Lumber Co., 73 Texas, 84; Missouri, K. & T. Ry. v. Thompson, 11 Texas Civ. App., 662; Lawson's Presumptive Evidence, pp. 80 and 576, rule 19; Graham v. Boston & A. Ry., 156 Mass., 4, 30 N. E. Rep., 359.

That the usual and customary methods of the business under the facts in this case were as a matter of law known and assumed.  Bonnett v. G., H. & S. A. Ry., 89 Texas, 72; Galveston, H. & S. A. Ry. v. Gormley, 91 Texas, 399; Gulf, C. & S. F. Ry. v. Huyett, 99 Texas, 630; Houston & T. C. Ry. v. Turner, 99 Texas, 547; Wood's Master and Servant, 2d ed., sec. 382; Bailey's Liability of Master, etc., pp. 35 and 180.

The court erred in submitting to the jury the first paragraph of the general charge.

One of the vices of this paragraph of the charge is, that it is on the weight of the evidence, because it in effect states the law to be that if at the time the coupling was made the engineer moved the engine back "without warning, and brought about an unusual jar or jolt," and that it was negligence under all the facts and circumstances to cause the engine "to come in such contact with said cars," if it did so, and such negligence, if any, directly caused the accident and death of Mitchell, without negligence on his part, and if he "did not assume the risk," then the verdict should be for plaintiffs; thereby assuming as a matter of law that if warning

was not given Mitchell that the coupling was about to be made, this was negligence, and was the proximate cause of the accident. Houston, E. & W. T. Ry. v. Greer, 22 Texas Civ. App., 5; St. Louis S. W. Ry. v. Rea, 99 Texas, 58; Texas Midland Ry. v. Booth, 35 Texas Civ. App., 322; International & G. N. Ry. v. Lewis, 63 S. W. Rep., 1091; San Antonio & A. P. Ry. v. Vaughn, 5 Texas Civ. App., 202; Texas & Pac. Ry. v. Roberts, 2 Texas Civ. App., 113; Galveston, H. & S. A. Ry. v. Thompson, 44 S. W. Rep., 8; Western U. Tel. Co. v. Burgess, 60 S. W. Rep., 1023.

Another vice of this charge is, that the doctrine of assumed risk, as it should have been applied to the pleadings and undisputed fact that it was the custom to make couplings in this manner, was wholly ignored, and it assumes that the acts and doings at the time the coupling was about to be made did not, as appellant contended, warn Mitchell that a coupling was about to be made; and it states in effect that he did not assume the risk arising out of the custom of coupling cars without the usual signal of the bell. Missouri Pac. Ry. v. Shuford, 72 Texas, 165; Philadelphia & R. Ry. v. Spearen, 86 Am. Dec., 544; Steamboat v. King, 16 Howard, 469.

Another vice of this charge is, that it clearly intimates to the jury that in the opinion of the court there was no merit in appellant's contention that the acts and doings of the men and the stopping of the engine was sufficient to notify Mitchell that the coupling was about to be made, and it was confusing and calculated to induce the jury to believe that a failure to warn Mitchell that a coupling was about to be made would entitle appellees to recover, even though he had actual notice through other sources, if he was not himself negligent, and did not assume the risk. It was in this respect, both on the weight of the facts, and calculated to confuse the jury. Houston & T. C. Ry. v. Grych, 103 S. W. Rep., 703, and cases cited; Lee v. Yandell, 69 Texas, 37; Gaunce v. Gulf, C. & S. F. Ry., 48 S. W. Rep., 524; Missouri Pac. Ry. v. Christman, 65 Texas, 375; Houston City Ry. v. Artusy, 31 S. W. Rep., 319; Gulf, C. & S. F. Ry. v. White, 32 S. W. Rep., 322.

It has been so often stated by good authority as to no longer admit of doubt that when the facts and circumstances to support an issue leave an issue to be determined a mere matter of conjecture, there is no evidence to sustain the affirmative. It is sufficient in this case to sustain our assignment of error if the verdict is against the great weight and preponderance of the facts. We invite the attention of the court to the following cases on this point: Denham v. Trinity County Lumber Co., 73 Texas, 84; Mexican Cent. Ry. v. Lauricella, 87 Texas, 277; Fuller v. Ann Arbor Ry. (Mich.), 104 N. W. Rep., 414; 40 Am. & Eng. Ry. Cases (N. S.), 594; Graham v. Boston & A. Ry., 156 Mass., 4; 30 N. E. Rep., 359; Bowen v. Illinois Cent. Ry. (U. S. C. C. A.), 39 Am. & Eng. Ry. C. (N. S.), 274.

 With all the circumstances and conditions previously stated to the witness, and in the minds of counsel and witness as a basis for the question and answer, he was asked whether or not it would be proper and customary to open the throttle and give the engine

steam in order to start it—to which he answered, no. It was error to permit this question and answer, because it is not within the proper scope of expert and opinion evidence, and it is, therefore, a mere conclusion, and an invasion of the province of the jury. Texas & Pac. Ry. v. Felker, 90 S. W. Rep., 530; Jeffrey v. Keokuk & D. M. Ry. (Iowa), 5 Am. & Eng. Ry. Cases, 568; Hamilton v. Ry., 36 Iowa, 31; Muldonay v. Ry., 36 Iowa, 462; Belair v. C. & N. W. Ry., 43 Iowa, 662; Crain v. Northfield, 33 Vt., 126; Baltimore & Ohio Ry. v. Schultz (Ohio), 22 Am. & Eng Ry. Cases, 583; Hopkins v. Indianapolis & St. L. Ry., 78 Ill., 32; Buxton v. Somerset Potters Wks., 121 Mass., 446; Kansas Pac. Ry. v. Peavy (Kan.), 11 Am. & Eng Ry. Cases, 260.

When a verdict is so large as to "induce suspicion" of improper conduct, or to indicate passion or prejudice; or if there is anything to "indicate" that the verdict is not the result of the honest conviction of the jury, it will be disturbed. Cook v. De la Garza, 9 Texas, 362; San Antonio & A. P. Ry. v. Parr, 26 S. W. Rep., 862; East Line & R. R. Ry. v. Smith, 65 Texas, 173; Western & Atl. Ry. v. Young, 83 Ga., 512.

*Bertrand & Arnold, H. C. Carter* and *Perry J. Lewis,* for appellees.

JAMES, CHIEF JUSTICE.—The action was by the widow of C. F. Mitchell, for herself and her two minor children, for damages for the alleged negligent killing of the husband and father, asking damages in the sum of $40,000.

The petition alleged that deceased, a locomotive fireman, while engaged in blowing out the boiler in the performance of his duty, was knocked from the running board by the negligent act of the engineer, who after the engine had stopped within a few feet of certain cars to which the engine was to be coupled, suddenly with great and unnecessary force and without any notice or warning to Mitchell, and in contravention of a rule, No. 30, which read, "The engine bell must be rung when an engine is about to move," started the engine backwards towards the cars, throwing him from his position on the running board and causing his death.

Defendant answered besides by demurrer and general denial, that when the engine approached the cars Mitchell was aware that the coupling was about to be made, and had ample opportunity to protect himself by returning to the engine cab, or by holding to the rods and handholds provided, but he negligently failed to take these precautions for his safety, and thereby caused, or contributed to cause, his death. That such coupling, bump or collision as occurred at the time was an habitual and common occurrence in the handling of cars, which was known to Mitchell and he therefore assumed the risks incident thereto. That said rule had no application to the conditions of this case. That it was Mitchell's duty to give the signals referred to. That he knew, or could have known by the exercise of ordinary care, that the coupling was then about to be made, and by ordinary care for his own safety could and should

have protected himself.  That he died from causes not chargeable to defendant.

The verdict was for $10,000 in favor of the widow and $7,500 for each of the children.

Under the first assignment appellant urges this proposition: "The undisputed facts show that Mitchell knew, and was bound to have known, when the engine stopped, what the purpose of the stop was, and that the engine would in a moment move forward to make the coupling.  It was therefore unnecessary to give him warning of what was about to happen, and it was error to refuse to take this issue from the jury" by giving a charge asked which was in effect that it was immaterial whether the bell was sounded or not just before moving to make this coupling.

The following testimony was in the case:  The train stalled a short distance east of Schulenberg on a grade, and it became necessary to cut the train and take part of it on to a switch and the event in question occurred when the engine came back to couple on the remaining cars and carry them on..  On the way back the engineer ordered the fireman Mitchell to go out upon the running board and blow out the boiler.  This act became a part of his duty.  The rear end of the tender was toward the cars.  To blow out the boiler it was necessary for the fireman to stoop down and handle the lever.  The lever was under the boiler and came upward and outward when raised and had to be held up to continue the work.  Deceased was thus engaged blowing out the boiler when the engine reached the cars and came to a stand a few feet off, and Mitchell continued the work until the engine was moved, and the engineer testified that the blowing out stopped just when the engine struck the train; so that it was continuing when the start was made; and he also testified that no signals, as ringing the bell or blowing the whistle, were given; that the process of blowing out the boiler with the blow cock open, as was the case all the way down the grade, caused a great deal of noise, and that frequently a fireman under those circumstances could not realize that the engine was in motion and that such condition would exist on an incline where the engine would roll as was the case here; that in returning on the down grade the engine merely rolled and that he stopped it from four to six feet of the standing cars; that such a stop was made to permit the brakeman to go ahead and adjust the couplings on the cars, and that he would then move his engine to make the coupling on signals from the brakeman, which signals a fireman on the running board would be unable to see.  He also testified that by the rule above mentioned the bell was supposed to be rung before the engine was moved, that this was a signal that it was going to be moved, to warn anybody that was concerned in the movement of the engine.  Also, in substance, that it was not the duty of the fireman under such circumstances to ring the bell, and there was testimony that it was the duty of the one moving the engine to attend to this.  The witness Lackey testified that upon such a stop it was the duty of the engineer, before starting the engine, to see that

the bell was rung, and that a fireman blowing out a boiler would have both hands occupied and the bell cord would not be in easy reach for him. The accident occurred at night. The engineer testified that holding on to the lever would not give him much support. The engineer also testified that he knew the work of blowing out the boiler was going on and that he expected Mitchell to stay there and blow out the boiler until he gave him a signal to stop. Lackey testified that when an engine stops while an employe is blowing out a boiler and is put in motion again, it is the duty of the engineer to see that the bell is rung.

We find it unnecessary to go further into the evidence to deal with the assignment. The issue of the necessity of notice to Mitchell was clearly in the case. It is true it appears that he knew that the purpose of moving down to the cars was to attach the engine to them. But he had a right to expect that the act would be performed in the proper and usual manner. An employe is not held to anticipate a negligent act of another. The testimony above noted would show this condition of things: That while the engine was rolling down the grade, Mitchell was directed to go out upon the running board and blow out the boiler, which required him to take a stooping position on the board which engaged both his hands in holding the lever, so that while performing this duty he was in a situation which rendered him liable to be thrown off by any violent unexpected movement of the engine; that there was such noise about him as prevented him from realizing that the engine was moving, and if this was found as a fact, it would appear that he did not realize that the engine had reached a stop. But assuming that he knew it had stopped, he might well have acted upon the belief, although knowing that the stop would naturally be for a short time, but long enough for the brakeman to arrange the couplings and give signals, that the engine would not even then be put in motion until the engineer gave him notice that he would start it. Such notice the evidence shows may have been conveyed by ringing the bell.

It therefore seems to us that the jury would have been warranted in finding that there was negligence in failing to ring the bell, before the engine was started. There was abundant evidence that the coupling was made with great force, greater than was necessary, but we do not think it necessary to do more than refer to this, in connection with the fact that no notice of the movement of the engine was given, as proof of negligence; and that such negligence was the proximate cause of Mitchell being knocked off the running board. It appears to us quite clear that he had the right to expect and rely upon a notice being given him, engaged as he was within the knowledge of the engineer, and that it would be useless to contend that he was guilty of contributory negligence, as a matter of law, in continuing his work under the circumstances, relying upon the signal being first given. If this is so, it would be equally inadmissible to say that as a matter of law that the engineer was not guilty of negligence in moving the engine as he did without

first giving the signal. Under this assignment is a second proposition which is answered by what is above stated.

The second assignment complains of the first paragraph of the charge: "If you believe from the evidence that on or about the 23d day of November, 1903, Charles F. Mitchell was in the employ of the defendant in the capacity of a fireman on one of its freight trains, and that while said train was near the station of Schulenburg, and while the locomotive of said train was backing down the main line to couple on to some cars that were standing on the main line, it was the duty of said Charles F. Mitchell to go out upon the running board of the locomotive to blow out the boiler, and if you further believe from the evidence that while the said Charles F. Mitchell was out upon the running board of said locomotive, he was in the discharge of his duty blowing out the boiler, and if you further believe from the evidence that while he was so engaged in the discharge of his duty, if he was so engaged, the engineer of said locomotive, without warning, caused said locomotive to move back against said cars with a sudden, violent and unusual jar or jolt, and you further believe from the evidence that it was negligence, under all the facts and circumstances in evidence before you, to cause said locomotive to come in such contact with said standing cars, if it did come in such contact with them, and if you further believe from the evidence that such negligence, if any, directly caused the said Charles F. Mitchell to be thrown from the running board of said locomotive, if he was so thrown, and if you further believe from the evidence that he was thereby injured, as alleged in plaintiff's petition, if he was so injured, and you further believe from the evidence that such injuries, if any, directly caused the death of said Charles F. Mitchell, and if you further believe from the evidence that the said Charles F. Mitchell was not guilty of any negligence which caused or contributed to his injuries, if any, or to his death, and you further believe from the evidence that he did not assume the risk, and if you further believe from the evidence that the plaintiff, Mrs. C. F. Mitchell, is the surviving wife of the said Charles F. Mitchell, and that Maggie Mitchell and Henry Mitchell are the surviving children of said Charles F. Mitchell and Mrs. C. F. Mitchell, and if you further believe from the evidence that said wife and children have been damaged by reason of the death of the said Charles F. Mitchell, then I charge you that your verdict must be for the plaintiff."

Five points of objection are made: 1st. That the paragraph assumes that if warning was not given Mitchell that the coupling was about to be made, this was negligence. This point is clearly not well taken. 2d. That it assumes that rule 30 was in force and applied. There was no assumption of this fact. 3d. That in reference to assumed risk, the rule should have been given the jury which was required by the undisputed fact that it was the custom to make couplings in the manner in which this coupling was made. There was no such undisputed fact. 4th. That it intimates to the jury that there was no merit in appellant's contention that the acts and doings of the men and the stopping of the engine was suffi-

cient to notify Mitchell that a coupling was about to be made. Also that it was confusing and calculated to induce the jury to believe that a failure to warn Mitchell would entitle plaintiff to recover, even though he had notice from other sources. In this connection appellant does not point out to us evidence tending to show that Mitchell knew from other sources that the engine would start at that moment. The contention seems to be that he knew it, because the general purpose of the transaction was to effect the coupling. It seems to us that if we assume there was an issue as just indicated, there was nothing in the paragraph, of which appellant can complain in reference to it. If Mitchell knew in any way or from any source that the engine would then start, this would affect the issue of his contributory negligence, and the charge covered this because it stated that plaintiffs could not recover if Mitchell was guilty of contributory negligence. We think also that if the jury found such a fact in considering all the circumstances they could not well have found that the omission of the engineer to give warning was an act of negligence causing Mitchell's death. There was nothing in the paragraph indicating an opinion of the court upon the testimony, or against the theory mentioned by appellant. It submitted the case properly on plaintiffs' theory under the pleading and the testimony. 5. That the words "without warning" are used in the charge to declare appellant's duty to notify Mitchell that a coupling was about to be made, and this was calculated to cause the jury to consider other means of warning which might have been given, whereas under the pleadings and facts if any warning ought to have been given, it was confined to the ringing of the bell. The petition did not. confine the necessary warning to the ringing of the bell. The brief does not, in this connection, present any statement of the evidence on this subject.

We conclude there was no error contained in the paragraph. It is not a charge against any theory of defendant. We have treated it upon its own merits, without any reference to the various theories submitted in requested charges given on behalf of appellant.

The third assignment of error complains of the overruling of the motion for new trial, and alleges that the overwhelming weight of the facts shows that the engineer and the other employes handled the engine, in making the coupling, with all the care the law required; that with full knowledge of the facts and conditions that affected his safety and of all the dangers, including the fact that a coupling was about to be made, deceased went out upon the running board and remained there and voluntarily exposed himself to the hazard, and without taking hold of the rail or any precaution for his safety, such as persons of ordinary care would have done, and he assumed all risks and was also guilty of negligence which caused and contributed to his injury.

In this place appellant again insists that as Mitchell knew the engine was moved backward down the track for the very purpose of making the coupling to the rear section of the train, knew where the train stood and the time it required to reach it, and knew the stopping of the engine was for the purpose of allowing time for the

brakeman to go ahead and prepare the couplings, therefore his fall was not due to any want of care on the part of the engineer, unmixed with his own fault or want of care. We think we have already discussed this matter sufficiently.

Appellant next insists that Mitchell should have used the hand rail, and that the lever, if he was holding it by both hands, should have supported him against the fall. If he was stooping and holding the lever up with both hands, as the testimony indicated was what was to be done in blowing out the boiler, it would hardly be right to expect him to be holding, or to be able to grasp, in an unexpected jolt, a rail that was considerably above him. As to the lever supporting him in any event, the engineer speaking of this testified that "it would hold his weight all right enough, but in that kind of a position it would not give him much support."

It is also urged that the evidence shows that the coupling was made with due care, and the jolt, though necessarily considerable owing to the couplings being automatic and the engine a very heavy one, as testified to by the engineer, was, as all the evidence showed, done with due and ordinary care. It is probable that if notice had been given Mitchell, the jolt would not have injured him. The force used in making the coupling may have been usual and proper, under ordinary conditions, yet the use of the same force might occur at a time and under circumstances, to constitute it negligence. The fact that Mitchell was in a position on the engine which exposed him to the danger of being thrown from it by a sudden and violent movement of the engine, when he had reason not to expect any movement at that particular time, his exposure being known to the engineer, presents a case of negligent conduct on the part of the engineer, although the movement itself was just such a one as was usual in making couplings. The assignment is overruled.

The fourth assignment complains of certain testimony given by Lackey. The point is made clear by the propositions advanced under the assignment as follows: "After stating the supposed situation of the engine and cars just preceding the act of making the coupling, the witness was requested to explain to the jury what would be the proper and usual way of handling an engine under those conditions to make that coupling; to which he replied, in effect, that it would only be necessary to release the air, when the engine would start and roll itself into that cut of cars. This was a mere conclusion of the witness and an invasion of the province of the jury." Also, "the question and answers objected to were not properly within the domain of expert and opinion evidence, and it was error to admit it." The answer of the witness was that at that place all that would be necessary would be to release the air; the engine would start and roll itself into a cut on that hill.

The objections made to the introduction of this testimony, as stated in appellant's brief, are thus expressed: Too remote and speculative a question calling for the mere conclusion of the witness upon a state of facts not supported by any evidence in this case; and it is not a matter that he is competent to give an expert opinion on; irrelevant and immaterial; an invasion of the province

of the jury, and not the subject of expert testimony. The brief does not press any point except that the answer was a mere conclusion of the witness and an invasion of the province of the jury; and that the subject was not properly within the domain of expert and opinion evidence.

It seems to us that whether or not upon the conditions existing the engine required steam to start it, or that it would roll if the air was released, was a fact and not a mere conclusion or opinion. It was of a matter which persons outside of those experienced in the operation of engines, would hardly be presumed to know. Therefore experienced persons could properly give evidence touching the fact. Galveston, H. & S. A. Ry. v. Crosskell, 6 Texas Civ. App., 166.

The sixth assignment presents the same questions.

The fifth assignment complains of testimony given by the witness Lackey in effect that under the conditions such as existed at the time the coupling in question was made, it was not proper and customary to give the engine steam to start it to make the coupling. The point made in appellant's proposition is that this was not within the proper scope of expert and opinion evidence and was therefore an invasion of the province of the jury. The following cases are adverse to the proposition. St. Louis & S. F. Ry. v. Smith, 90 S. W. Rep., 929; Galveston, H. & H. Ry. v. Bohan, 47 S. W. Rep., 1050; Galveston, H. & S. A. Ry. v. Henning, 39 S. W. Rep., 302; Missouri, K. & T. Ry. v. Schilling, 75 S. W. Rep., 66.

The eighth and ninth assignments complain of the admission of a statement made by deceased to the engineer as he resumed his place on the engine after the coupling was made as follows: "After the coupling was made, and while in the act of coming into the cab from the ground Mitchell said: 'The jar in the coupling caused me to lose my balance and I fell from the running board to the ground and struck on my back;' this was fifteen or twenty seconds after the coupling was made." This statement was part of the *res gestae*. Galveston, H. & S. A. Ry. v. Davis, 65 S. W. Rep., 217; International & G. N. Ry. v. Anderson, 82 Texas, 516.

By the seventh assignment it is alleged that the verdict for $10,000 for the widow and $7,500 for each of the children, aggregating $25,000, is excessive. The following are facts that appear from the testimony: Mitchell was a strong, robust and industrious man, 36 years of age. His wife's age was 30, the girl's 9 and the boy's 7. For several years he had been engaged as locomotive fireman, earning by mileage and overtime from $80 to $100 a month on the average. It had gone as high as $125. He ran regularly, except when business was dull in the summer, and then he worked when some one laid off, and until such person resumed work. He was then on what was known as the extra list. There was no evidence showing precisely what his earnings as fireman amounted to during the dull season, except what light was thrown on this by the fact that in July preceding his death he did not work steadily, but that in August he worked and until October 25, earning in August $90 and in September $97, and up to October 25 $69. However, Mrs. Mitchell testified that he spent all his spare time

at home and helped about the place all the time when not at work, helped to do everything she had to do. It was shown that deceased was a good fireman, a safe and reliable man, and the position of road engineer was the next position above that of fireman in the line of advancement. That he was a good husband and father, was affectionate to and took great interest in his children and devoted much time and attention to their rearing and training. He gave all his earnings, except what was deducted for hospital dues, to his wife for the support of the family. His personal expenses were light and were supplied out of this fund. His expectancy was 31 years.

The above are substantially the facts the jury had before them in arriving at what was a proper allowance to the wife and children for the pecuniary loss sustained by them. It is very earnestly urged by appellant that the allowance was out of all proportion to the pecuniary loss sustained, as evidenced by the testimony, and that the jury must have arrived at the amounts by motives not consistent with a purpose to award just compensation.

The verdict in this respect is not without precedent. In the case of International & G. N. Ry. Co. v. McVey, 81 S. W. Rep., 991, 83 S. W. Rep., 34, the Court of Civil Appeals at Austin held not excessive a verdict for $8000 in favor of the widow and $4000 for each of three children, where the evidence disclosed that the deceased husband and father was a section foreman receiving $50 a month, and with an expectancy of only 19 or 20 years. It is true the judgment in that case was reversed by the Supreme Court for an error in a charge, but the reasons stated by the Court of Civil Appeals for holding the verdict not excessive are of value and would amply sustain the finding made on the facts here.

Mrs. Mitchell was younger than deceased, and her expectancy therefore at least equalled his. He was supporting her and the children in good circumstances by devoting all his earnings to them, except what was needed for his own bare necessities. That this disposition of his earnings would have continued, had he lived, is a conclusion that can not well be doubted. It was also an admissible conclusion that his earnings would have improved. The fact that part of the time in dull seasons his employment was not steady was not necessarily an important factor in reducing his earning capacity, as it appears, from what testimony there was on the subject, he did make substantial earnings in such seasons, and when laid off he stayed at home assisting his wife, which of itself was of some pecuniary  value.

When we consider that the jury would have been justified in arriving at the conclusion that he and she would have lived to old age, and that the earnings of deceased would have continued as they were, or in an increasing proportion, and that his disposition in the application of his earnings to the uses of his family would not change, no one can, we think, reasonably assert that ten thousand dollars was too great an allowance for her.

In reference to the children, both of whom were still of tender age, it would be a difficult and delicate matter for the courts to

enforce their own views as to the amount that would justly compensate them for the loss, when the law commits such matter to the jury for determination. As stated in Missouri Pac. Ry. v. Lehmberg, 75 Texas, 67: "When no amount is fixed by law, and no rule prescribed for making the calculation upon facts capable of exact ascertainment, it necessarily follows, we think, that the law-maker intended that, having reference as far as practicable to conditions existing at the time of the death, juries, from their own knowledge, experience and sense of justice, should fix and assess the proper sum. They are expected to act uninfluenced by passion, prejudice or partiality, and to pay due regard to the ascertained facts and conditions surrounding the subject. When it appears to the court that they have disregarded these requirements, their verdict will be set aside. On the other hand, when the court is unable to determine that these things have not been observed by the jury, and when it does not appear that the verdict is not the result of the honest endeavor of the jury to follow their own convictions in the exercise of a power not precisely defined, we think that the law intends that the jury's estimate, rather than the equally undefined one of the judges, shall prevail."

It is far easier to give reasons for approving an allowance of $7,500 for each of these children than for declaring that the jury in doing so went beyond the considerations inherent in the circumstances and conditions shown to exist at the time of their father's death. In fact, we can see no just foundation for the latter. If there had been only one child, of tender age, its period of dependence being long and not necessarily limited to the age of maturity, with the useful example and training such as it would have had with the assistance of such a father, as well as his support, who can, with any degree of confidence in his judgment, say that the sum of $7,500 was more than would compensate its loss? What is true of one is true of two children in like situation. The judgment is affirmed.

*Affirmed.*

NEILL, Associate Justice.—I concur with the foregoing opinion in everything except the amount of damages, which is unprecedented and extends far beyond the measure of just pecuniary compensation.

Writ of error refused.