**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Steve GOODSON, Appellee.**

No. 13735.

Court of Civil Appeals of Texas.

San Antonio.

April 12, 1961.

Rehearing Denied May 3, 1961.

Houchins, Anderson, Smith & Null, Victoria, for appellant.

Helm, Jones, McDermott & Pletcher, Houston, Arthur M. Green, Victoria, for appellee.

BARROW, Justice.

This suit is by Steve Goodson, appellee, against the Missouri Pacific Railroad Company, appellant, to recover damages for personal injuries alleged to have been caused when a string of cars was "kicked" against a number of box cars where appellee was coupling air hoses. The suit was brought under the terms and provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51. The trial was to a jury. The parties stipulated that $1,036 represented reasonable medical expenses for the treatment of appellee on account of injuries suffered. The jury found in favor of appellee and fixed his damages for personal injuries at $85,000. The trial court entered judgment against appellant in the sum of $86,036. This appeal is from that judgment.

Appellant seeks a reversal of the judgment upon four points, which will be considered separately in order.

By its first point, appellant contends that a new trial should be granted "because the trial court erred in admitting opinion evidence over the objections of the appellant." This accident occurred in appellant's switching yard at Bloomington, Texas, during switching operations making up a train. Appellee, a brakeman, was coupling the air hoses between two stationary cars when appellant's train crew kicked out a string of loose unattended cars, which bumped into the cars where appellee was working, causing them to move. Appellee was knocked down and a car wheel ran over his right leg, injuring and mangling it to the extent that it had to be amputated. It is appellant's contention that the court erred in permitting the witness Munlin, the locomotive engineer, to testify that "it is not proper to kick some cars against (a) cut" of box cars when a man is coupling the air hoses between them; and that if a man "knows the air is being coupled, it is improper to give a signal to kick cars against" the cars being coupled. That appellee should not have been coupling these cars without notifying the conductor, and that in fact he should have notified the witness. Appellant also contends that the court erred in permitting the witness Parker, the conductor, to testify:

"Q. So there would be nothing improper about Steve starting to follow the cut of cars and working back towards the crossing? A. No. In this instance it was the only logical thing to do, because he had to go back to the crossing anyway."

Appellant objected to this testimony on the grounds that the witnesses were stating opinions; that the matters stated were matters of common knowledge, not the subject of expert opinion; that they "cumbered" the proceedings and were prejudicial.

The record shows that the switching operation was under the direction of Parker, the conductor, under whose direction appellee was coupling the cars. That it was appellee's job to do that, and that Parker knew appellee was doing so. It was Parker who gave the signal to the engineer to cut out the cars and kick them against the other cars. He knew that in order to couple the air hoses appellee would have to go between the cars, and he knew the railroad policy, that it was dangerous to move cars when people are working around, under, or between them. There was much testimony, without objection, regarding the proper methods of switching, coupling and moving cars, and regarding safety during such operation. Thus the issue is of primary negligence.

It has been repeatedly and consistently held by the Courts of this State that the usual, customary and proper methods of handling the operation of railroad trains and switching operations such as involved in this case, are not matters with which ordinary jurors are sufficiently familiar to pass upon, and are the subject of testimony by witnesses who are shown to be qualified as experts. McCray v.

Galveston, Harrisburg & San Antonio R. Co., 89 Tex. 168, 34 S.W. 95; Houston & T. C. R. Co. v. Cowser, 57 Tex. 293; Houston Belt & Terminal R. Co. v. Stephens, 109 Tex. 185, 203 S.W. 41; Galveston, H. & S. A. R. Co. v. Sample, Tex.Civ.App., 145 S.W. 1057; Galveston, H. & S. A. R. Co. v. Grenig, Tex.Civ.App., 142 S.W. 135; Missouri K. & T. R. Co. of Texas v. Williams, 56 Tex.Civ.App. 246, 120 S.W. 553; Galveston, H. & S. A. R. Co. v. Mitchell, 48 Tex.Civ.App. 381, 107 S.W. 374; International & G. N. R. Co. v. Collins, 33 Tex.Civ.App. 58, 75 S.W. 814; Galveston, H. & S. A. R. Co. v. Hughes, 22 Tex.Civ. App. 134, 54 S.W. 264; Galveston, H. & S. A. R. Co. v. Ford, 22 Tex.Civ.App. 131, 54 S.W. 37. It appears from the evidence that the witnesses Munlin and Parker are railroad men who have had many years of experience in the matters about which they testified. We think the testimony objected to was the subject of expert testimony, and that the witnesses were qualified as experts.

Appellant's second point complains that the argument of appellee's counsel to the jury "was reasonably calculated to advise and probably did advise the jury of the effect of their answers to the special issues submitted." We overrule the point. We have carefully considered all of the argument of which appellant complains and have found nothing improper. To set out all the argument which appellant contends is objectionable would unduly lengthen this opinion. In substance, the argument requested the jury to answer the first nine issues "we do", the next ten issues, "we do not", and Issue No. 20, "It was not the result of an unavoidable accident." Complaint is also made of counsel's argument on the unavoidable accident issue. We find nothing improper in the argument. Counsel simply explained the issue and the instruction in connection therewith. It is well settled that counsel may in argument suggest how special issues should be answered, and may even "urge and beg" the jury to so answer them, provided the argu-

ment does not inform the jury of the effect the answers will have upon the judgment to be rendered. Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304. We are also of the opinion that the argument complained of is the type of argument which, if harmful, could be cured by an instruction from the trial court. Younger Bros. Inc. v. Myers, Tex.Sup., 324 S.W.2d 546; Household Furniture Co. v. Storrie, Tex. Civ.App., 292 S.W. 612. The record shows that no timely objection was made, nor was any timely request made for an instruction from the court. The complaint was made for the first time on motion for new trial. Moreover, from an examination of the entire record, we have reached the conclusion that appellant suffered no harm by such argument. Rule 434, Texas Rules of Civil Procedure.

Appellant's third point seeks a reversal on account of alleged jury misconduct, in that it is contended the jury rendered a quotient verdict. The point is overruled. Only three of the jurors testified on motion for new trial. These jurors all testified there was no agreement to be bound by the result of a quotient. It was suggested that an average be taken "as a starting point to argue from, to see what the average would come to;" that there was no agreement to be bound by the result; that the quotient or average came to $82,000 and some odd dollars; that thereafter the argument between the jurors lasted some thirty minutes. Appellant relies strongly on the testimony of Jake Herzberger, the juror who testified that by averaging the various sums, it was thought they could come to some agreement, and that thereafter the jury "gradually" agreed to the figure of $85,000. In order to warrant a reversal on account of a quotient verdict there must be an antecedent agreement to be bound by the quotient. Page v. Lockley, Tex.Civ.App., 176 S.W.2d 991, reversed on other grounds, 142 Tex. 594, 180 S.W.2d 616. The evidence of the

jurors on motion for new trial justifies the conclusion that there was no agreement to be bound by the results. Page v. Lockley, supra.

By its fourth point appellant complains that the "Court erred in refusing to grant a new trial as the damages allowed by the jury are manifestly excessive under the evidence." The award of $85,000 damages was for the lost earnings, diminished capacity for work, for past and future physical pain and suffering, and past and future mental anguish. At the time of the accident Steve Goodson was fifty-four years old and had been working for appellant for more than thirty-two years. He had only a low seventh grade education. It was stipulated by the parties that he had a life expectancy of eighteen and one-half years, and a work-life expectancy of eleven years. It was also stipulated that money may be safely and securely lent at the rate of 6% per annum. His earnings steadily increased from $5,581.34 in 1953, to $7,656.13 in 1957, however, in 1958, for some unknown reason, his earnings dropped to $7,345.28. As the result of the occurrence of April 27, 1959, out of which this suit arose, Steve Goodson was caused to fall between the rails, with his left leg inside the rail. His right leg was mangled and had to be amputated. His right shoulder was injured. The ligaments were torn loose, and he did not have much use of his right shoulder, and his right arm was weakened. He walked with crutches and his shoulder gave way at times, with the result that he would fall. He fell and hurt his left knee and it was six months before the wound on his knee would heal. He had undergone three operations on his right leg. The third operation was performed on December 4, 1959, and the remaining stump was only six inches from his groin. He could not stand pressure on the stump. He could

sleep only on his back and/or left side and did not sleep too well. He was unable to help his wife around the house, and it was difficult for him to take a bath. He is never completely free of pain. He felt pain and some itching in his lost leg. Immediately following the receipt of his injuries he was confined in the hospital in Victoria for thirty-two days, and then, for about a month, in a hospital at Kingsville, from which he was released on July 5, 1959. He was in bed, in the hospital and at home, for more than two months in connection with the December, 1959, operation on his leg. He still has weakness and pain in his left knee. He had been unable to work since he was injured.

The Rule in this State has been stated in 13 (Rev.) Tex.Jur. 271, § 151, Damages, as follows:

"It is a well settled general rule that where the law furnishes no legal measure of damages, and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is the result of passion, prejudice or corruption, or that the evidence has been disregarded, their verdict is conclusive and will not be set aside as excessive, either by the trial court or on appeal."

This text is supported by an unbroken line of decisions. We have found nothing in the verdict itself, or elsewhere in the record to indicate that the jury in this case was guided by any motive other than a calm deliberation and conscientious consideration of the evidence and the charge of the court. Appellant's fourth point is overruled.

The judgment is affirmed.