## SOUTHWESTERN PORTLAND CEMENT CO. v. GRAVES. (No. 912.)

(Court of Civil Appeals of Texas. El Paso. Jan. 23, 1919. Rehearing Denied Feb. 20, 1919.)

1. EVIDENCE ☞126(1)—RES GESTÆ—DECLARATIONS.

Statement as to manner in which accident happened, made by deceased about two minutes after the accident, to one coming in response to his shout, *held* admissible as part of res gestæ.

2. MASTER AND SERVANT ☞278(17)—NEGLIGENCE—EVIDENCE.

Testimony in action for death of employé *held* to warrant jury in finding negligent starting of machinery by another employé.

3. APPEAL AND ERROR ☞1140(1) — DISPOSITION OF CAUSE — EXCESSIVE VERDICT — REMITTITUR.

Under Rev. St. art. 1631, the Court of Civil Appeals, when of opinion that verdict is excessive, must indicate the excess, and allow remittitur, and not reverse the case.

4. DEATH ☞99(5) — RECOVERY BY PARENT — AMOUNT.

Under evidence as to contributions by deceased 28 years old, to plaintiff, his father, 65 years old, *held* recovery for his death above $1,-200 was excessive compensation.

Error from District Court, El Paso County; P. R. Price, Judge.

Action by George O. Graves against the Southwestern Portland Cement Company. Judgment for plaintiff, and defendant brings error. Affirmed conditionally.

Burges & Burges and S. P. Weisiger, all of El Paso, for plaintiff in error.

Geo. E. Wallace and W. S. Berkshire, both of El Paso, for defendant in error.

HIGGINS, J. Frank O. Graves was an employé of plaintiff in error, hereinafter called defendant. Defendant was operating a plant engaged in the manufacture of cement. In the discharge of his duty Graves was engaged in splicing a belt. He was standing near a window on the second floor of the building. Another employé, Valdez, was stationed upon the first floor with instructions from Graves to start the machinery upon a signal from Graves. Valdez testified that Graves told him to start the machinery "when you [Valdez] see my [Graves'] hand sticking through this hole through which one of the belts passes." The evidence shows that Valdez started the machinery unexpected by Graves, and the latter was thereby thrown through the window, fell to the ground below, sustaining injuries from which he subsequently died. This suit was brought by George O. Graves, defendant in error, father of deceased, to recover damages for the death of his son. It was alleged that Valdez had negligently started the machinery. Verdict was returned in plaintiff's favor for $4,300. A remittitur of $1,500 was entered, and judgment rendered for $2,800. From this judgment defendant prosecutes this writ of error.

[1] Plaintiff's witness Henry Otter testified that he was working for defendant at its plant when the deceased was injured; that he heard Graves holler and went to him; that he was the first to reach the injured man, and reached him about two minutes after he heard his exclamation. He then testified:

"He made a statement to me as to how the accident happened. There are many employés working around there. I had a conversation with him at that time as to how the accident happened. When I got to him I asked him what happened to him. He told me he was thrown out of the second story; that the Mexican started the motor, and when he started the motor it threw him out of the window. He said he had told the Mexican to go down and get him a skiver to connect the belt with; that is like a cat-gut point they use for lacing. He said instead of the Mexican going to get the skiver he went down and turned the machinery on—turned the motor on. He stated what position he occupied when he turned it on; he said he was standing with one foot on the window and one on the shaft, and had the belt in his hands this way, trying to get it together, when he told the Mexican to go get the skiver. That is the time the Mexican started the machinery.

I know from this statement and position what window he was at."

Error is assigned to the admission of the testimony of Otter of the statements made to him by the deceased as to the manner in which the accident occurred, upon the ground that the same was hearsay and not a part of the res gestae. Upon cross-examination, the witness Otter further testified:

"When I heard this man holler I was working in the stoker in the coal plant. I judge that was about twenty-five feet from where I found him. I was inside of the plant and he was outside. I went to him immediately."

In view of the fact that Otter's testimony shows he was working near the deceased at the time he was injured, went immediately to him, and reached him about two minutes after he heard the deceased holler, we think the evidence was properly admitted. Under the rule announced in this state, the statements made by the deceased to Otter at the time were a part of the res gestæ and admissible in evidence. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Ry. Co. v. Hall, 83 Tex. 675, 19 S. W. 121; Ry. Co. v. Feilder, 163 S. W. 607; Ry. Co. v. Williams, 50 Tex. Civ. App. 134, 109 S. W. 1128; Ry. Co. v. Mitchell, 48 Tex. Civ. App. 381, 107 S. W. 374; Hotel Co. v. Fox, 196 S. W. 652.

[2] It is next assigned as error that a peremptory instruction in defendant's favor should have been given because there is no evidence proving, or tending to prove, any negligence other than that of the deceased. The statement of the deceased, testified to by Otter, that the Mexican, Valdez, went down and turned the machinery on, instead of getting the skiver, clearly presents an issue of negligence upon the part of Valdez. Furthermore, the testimony of Valdez himself shows that he was guilty of negligence. Valdez testified that he and deceased were downstairs, and deceased went upstairs to fix the machinery; that before going deceased told him: "When you see my hand sticking through this hole through which one of the belts pass, why then you can start up the motor." He further testified:

"I remained down there near the motor, and waited for a signal. I saw the hand after he was upstairs, after he had gone above. I waited until he got upstairs, and was waiting for the signal, which he told me he would give me, for me to start up the motor at once, because he was in a hurry, and as soon as I saw his hand I turned on the motor slowly. He did not stick his hand through the hole—he held it over the hole, and I saw the hand over the hole from below. Frank gave me a signal. I started the motor up a little bit after he gave me the signal—almost simultaneously. The kind of signal I saw was the kind of signal Frank told me to act upon when I saw it."

This testimony of Valdez would have warranted the jury in finding that Valdez started the machinery when he saw Graves' hand over the hole instead of waiting until Graves stuck his hand through the same. There is therefore testimony presented both by the testimony of Valdez and the declarations made by deceased at the time of the injury, that Valdez had negligently started the machinery without waiting for the receipt of the agreed signal. The court, therefore, did not err in refusing a peremptory instruction in favor of the defendant.

[3] We are urged to reverse this case upon the ground that the verdict of the jury is so grossly excessive in amount as to show bad faith on the part of the jury, which was not cured by the filing of the remittitur, the defendant being entitled to a trial by a fair-minded jury to determine whether or not it was guilty of negligence. In Wilson v. Freeman, 108 Tex. 121, 185 S. W. 993 Ann. Cas. 1918D, 1203, the Supreme Court held that article 1631, R. S., is mandatory in its requirement that, when a verdict is excessive, it is the duty of the Court of Civil Appeals to indicate the amount of the excess and to allow a remittitur thereof, and that the latter court should not reverse a case upon the ground alone that the verdict is excessive. Upon the authority of that case, it follows that this assignment must be overruled in so far as it seeks an absolute reversal of the case.

[4] The remaining assignment also complains of the excessiveness of the verdict, and it is sustained to the extent of requiring a remittitur as hereinafter indicated.

The evidence discloses that plaintiff was 65 years of age at the date of trial. The deceased was 28 years of age at the time of his death. Plaintiff is a pumper for the Southwestern Railway Company, earning $75 a month, and is furnished a house in which to life by his employers. Plaintiff's wife died several years before. The deceased, at the time of his death, was earning $3.50 or $4 per day. The testimony shows that, when the mother of deceased and wife of plaintiff died, the deceased paid his mother's funeral expenses and hospital bills. Plaintiff testified that deceased furnished him $300 to pay the funeral expenses of the mother and expenses of her last sickness and when she was in the hospital. He testified that deceased would send him money every once in a while; that the first year he sent him $20, and on several times sent $40; that he sent $40 two or three times—not over three times; sent $20 not oftener than three times; sent him $5 a number of times. It is not clear from the evidence just how much the deceased had contributed to the plaintiff, but it is quite apparent that he had not contributed more than $500 or $600 in the aggregate, and that

this was the aggregate of the contributions of a number of years. In view of this evidence, this court is of the opinion that the judgment of the lower court is still grossly excessive, and that a further remittitur should be required as a condition of affirmance. Taking into consideration the entire testimony of the plaintiff, Graves, bearing upon the issue of his pecuniary loss arising from the death of his son, we think that the sum of $1,200 would amply compensate him. This cause is therefore affirmed upon condition that within 15 days defendant in error file a remittitur in the sum of $1,600, and, if such remittitur be not filed, the cause is reversed and remanded.

Affirmed conditionally.