### ST. LOUIS, B. & M. RY. CO. v. COLE.
· (No. 7950.)

Court of Civil Appeals of Texas. San Antonio.
March 14, 1928.

Rehearing Denied April 11, 1928.

**1. Trial ⬉139(1)—Refusal to instruct verdict held not error, where evidence raised issues for jury.**

Refusal to grant motion for instructed verdict *held* not error, where evidence in case raised issues for jury.

**2. Railroads ⬉327(1), 350(16)—One need not stop, look, or listen for train before crossing railroad track, and failure to do so is not negligence per se.**

One attempting to cross railroad track is not required to stop, look, or listen for approaching train, and it is not negligence per se to fail to do so.

**3. Railroads ⬉350(33)—Evidence held to raise issue of discovered peril in wife's action for death of husband in collision with train at crossing in city at night.**

In action by wife for benefit of self and children against railroad company where husband was killed when his automobile collided with train at crossing at about 11 o'clock at night within city limits, evidence *held* sufficient to raise issue of discovered peril.

**4. Railroads ⬉350(13)—Contributory negligence held question for jury in wife's action for husband's death in collision with train at crossing.**

In action by the wife for benefit of self and children for death of husband occasioned by collision with train at railroad crossing in city at 11 o'clock at night, evidence *held* to make question of husband's contributory negligence one for jury.

**5. Death ⬉58(1) — No presumption is indulged that deceased was contributorily negligent, but court assumes deceased acted as reasonably prudent person.**

In absence of testimony, there can be no presumption indulged that deceased was guilty of contributory negligence, but court will assume, in absence of evidence to contrary, that deceased acted as reasonably prudent person would act under circumstances.

**6. Appeal and error ⬉882(14)—Where no objection was made at trial to inconsistencies of issues, held error, if any was invited by defendant and not cause for reversal.**

Where no objection was raised in trial court calling attention to alleged inconsistencies of issues submitted to jury dealing with question of discovered peril and whether or not lookout was maintained, *held*, on appeal, that error, if any, was invited by defendant and not cause for reversal, since defendant could not have case tried upon different theory than that upon which it was presented in trial court.

**7. Jury ⬉110(12)—Objections to juror's competency because of disclosures that he was at scene of accident and was familiar with circumstances held waived, where he was accepted.**

In wife's action for death of husband at railroad crossing where juror, when examined on voir dire, stated he had lived in city where deceased was killed and had creamery at crossing where accident occurred, and that he was at scene of accident very quickly thereafter, but notwithstanding answers he was accepted as juror, *held*, that objections to his competency raised by his statements must be considered as waived by taking him as juror.

**8. New trial ⬉52—Jurors fixing verdict to prevent appeal held not misconduct invalidating verdict, since if excessive it could be reduced by appellate court.**

In wife's action for death of husband against railroad company, where jurors in discussions among themselves considered fixing amount of verdict to prevent appeal, *held*, that such conduct did not invalidate their verdict, since, if excessive, it could be reduced by appellate court.

**9. New trial ⬉52—Jurors' argument in good faith to secure verdict is of no consequence when they finally reach verdict which they all approve.**

Argument of jurors, in good faith addressed to each other to secure verdict, is of no consequence, when jurors finally conclude and reach verdict which they all approve, and mere illogical reason given for verdict that is supported by testimony will not affect it.

**10. Death ⬉99(4)—$42,500 verdict to wife and children of automobilist killed by train earning $3,500 per annum held not excessive.**

Verdict of $42,500 to wife and three children of automobile driver, killed in collision with train at railroad crossing, earning $3,500 the year preceding his death, *held* not excessive.

**11. Negligence ⬉139(1)—Charge defining negligence, using term "reasonably prudent" rather than "ordinarily prudent" person, held not erroneous.**

In wife's action against railroad for death of husband killed in collision at crossing, charge defining negligence as something that reasonably prudent person would not do, or failure to do something that reasonably prudent person would do, under circumstances, *held* not erroneous for

---
⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

having used words "reasonably prudent" instead of "ordinarily prudent" person.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**12. Evidence ⬳366(1)—Speed ordinance held admissible, where city secretary testified he was its custodian and that it was being enforced.**

In wife's action for death of husband against railroad company, ordinance relating to speed of trains *held* admissible, where it was offered by city secretary, who testified he was its custodian and that it was in use in city and was enforced; city being duly incorporated.

**13. Appeal and error ⬳1027—Where there are several grounds of negligence found, any one of which would entitle plaintiff to judgment, verdict should be sustained notwithstanding errors with reference to other grounds.**

Where there are several grounds of negligence found by jury, any one of which would entitle plaintiff to judgment, verdict should be sustained notwithstanding there may have been committed errors with reference to other grounds of negligence proved.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Suit by Lillian A. Cole, individually and as next friend of her minor children, Charles L., Jr., William J., and Wayne, against the St. Louis, Brownsville & Mexico Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. H. Crenshaw, Jr., of Kingsville, and Davenport, West & Ransome, of Brownsville, for appellant.

Rabel, Napier & Fristoe, of Harlingen, for appellee.

COBBS, J. Appellee, Lillian Cole, brings this suit for damages against appellant, individually as the surviving wife of Charles L. Cole, who was killed by appellant, and as next friend of their minor children, Charles L. Cole, Jr., William J. Cole, and Wayne Cole. It is alleged appellant negligently caused one of its engines to collide with an automobile driven by Charles L. Cole, deceased, at about 11 o'clock at night within the city limits of the city of Mercedes, from which collision said Cole was killed at a railroad crossing in said city.

The alleged grounds of negligence were:

"(a) Appellant failed to ring the bell as the locomotive approached the crossing as required by article 1672, P. C. 1925, (b) the appellant failed to blow the whistle or give any other adequate warning of the approach of the locomotive, (c) the appellant operated its locomotive at an unreasonable and dangerous rate of speed, (d) the appellant operated its locomotive at a rate of speed in excess of 20 miles per hour in violation of the ordinances of the city of Mercedes, (e) appellant failed to keep a lookout for persons lawfully using the crossing, (f) appellant was negligent in failing to provide a flagman, electric bell, light or other adequate signalling devices on said crossing, (g) discovered peril."

Appellant filed original answer and general demurrer which were overruled. The answer contained denials of each of the alleged grounds of negligence, and also pleaded contributory negligence on the part of the said Charles L. Cole, alleging that his contributory negligence was a direct and proximate cause of the collision.

The case was tried with a jury upon special issues, and all the issues being favorable to appellees, the court entered judgment for Mrs. Charles L. Cole in the sum of $12,500; for Charles L. Cole, Jr., $10,000; for Wm. J. Cole, $10,000; and for Wayne Cole, $10,000—aggregating the sum of $42,500. We might here add that all the findings of the jury are supported by the testimony.

[1] The first and second propositions challenge the holding of the court as error in refusing to grant the motion of appellant to instruct a verdict. Since there was evidence in the case that made it a jury question, the court committed no error in refusing the request. On every issue in the case, including discovered peril, there was controverting testimony.

The third proposition is to the same effect. The testimony makes the issue of Cole's alleged contributory negligence a question of fact and not of law, as well as the question of discovered peril. There was testimony on both issues that made them questions for the jury to pass on, and no error was committed by the court's submission of the questions to them.

[2] There is no rule of law in this state that requires one, before attempting to cross a railroad track, to stop look or listen for an approaching train, or that it is negligence per se not to do so. It involves an issue of negligence. St. Louis, B. & M. Ry. Co. v. Watkins (Tex. Civ. App.) 245 S. W. 797; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Trochta v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; B. & O. Ry. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. ——.

Appellant assumes that the uncontradicted evidence shows that the operators of the train did not discover the peril of the deceased in time to avoid the collision by the exercise of ordinary care in using all means at hand to stop the train, and hence challenges the ruling of the court in submitting that issue. Appellant would be right if the assumption were true. However, there was direct evidence on the issues. There was evidence showing the train's speed was 20 miles an hour or more, running on a side track off

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the main line. The fireman on the train stated he saw the automobile approaching the crossing at a rapid rate of speed 250 feet before it reached the track, and the conductor saw it a block and a half away, traveling at something like 40 miles per hour. It was a foggy night, and the pavement wet and slick.

[3] The fireman also testified the train was traveling 4 or 5 miles an hour when he discovered the automobile, and the automobile was traveling at 20 miles an hour. He testified the train was traveling at 4 or 5 miles per hour and could have been stopped within 10 feet. There was other testimony to the same fact, and the issue of discovered peril was clearly in the case.

As to deceased's contributory negligence, witness Townsend testified to the effect that he was traveling right behind the deceased in his own car. He further testified:

"That crossing sign was there, but you couldn't see it that night, or you couldn't see the track. You can't see the track on a day like to-day, because there is concrete built right over it, and it is just like a street car track, and there is nothing to indicate a railroad is there. In fact, the railroad crosses the highway right at the rise to the bridge and you won't see it at all. You won't see it now running along there unless some one called your attention to it, or you see that cross or something to indicate it. The elevation at that point is something about two feet—no, it is more than that; it is something like three feet, and in approaching the bridge you wouldn't notice it. Apparently, it is like a street car track and you would run upon it without seeing it. As to whether or not, on a foggy night such as that, you could have seen cross-arms sign, I went over it that night and I positively didn't see it. I didn't know it was there when I came back that night. I think that cross-arms sign is about 15 feet or 20 feet from the center of the highway. The highway is narrow at that point. I couldn't tell by that picture how high up those cross-arms are, but I have looked at it, and they are up somewhere about 8 or 9 feet high. It is up above the ordinary vision in driving along in a car. I am sure it couldn't be seen that night at all. There wouldn't be any earthly chance to see it. You couldn't have seen it if you had been looking down the road. You can't see the tracks in the daytime. You can't see it 30 feet away. Those tracks are in concrete and built so cars will run over them smoothly. Not only that, but the approach to the railroad on each side is concrete and high and even and comes on gradually, and the approach to the bridge comes up like this, and you just don't see it at all. In the course of my business I am taken over the Valley a good deal. I am over the Valley every week nearly, and I drive a car. I had been along this highway at the place in question a number of times, but I never did see it. I have never seen a train on it before or since."

Mr. Townsend testified that he was directly behind Cole, in fact within 30 feet of his car, at the time of the collision, and that he did not know of the existence of the track, and on this particular night did not know where he was; and in this connection he testified as follows:

"In fact, I didn't know a side track was there at all. I just thought it was a passenger train. It just looked like a passenger train. I did not know where we were then. I thought that we hadn't gotten onto the highway. I didn't know we had gotten onto the highway. I thought that was the main line and that this was a passenger train on the main line."

He testified further that there was a packing shed just across the track and about 40 or 50 steps to the right of the highway, and that along the side of the packing plant there was a string of electric lights which were so situated that "the locomotive as it approached the crossing had to pass in Mr. Cole's line of vision as he approached the crossing; that is, between him and those electric lights."

[4] Whether or not deceased was guilty of contributory negligence became under the facts a jury question. Beaumont S. L. & W. Ry. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 322. This case is a striking case in point with the last-named case, because Sterling, who was struck, was driving a noisy Ford roadster along a highway when nothing except a line of telegraph poles obstructed his view of the railroad track, and killed while crossing in front of a passenger train; and the defense urged there, as here, that Sterling was guilty of contributory negligence as a matter of law. The opinion is interesting as applicable here.

[5] In the absence of testimony, there can be no presumption indulged that deceased was guilty of contributory negligence. The court will assume, in the absence of evidence to the contrary, that the deceased acted as a reasonably prudent person would act under the circumstances. There is nothing shown that the deceased saw the approaching train. Townsend testified that no whistle was blown, but they were ringing the bell about the time of the collision.

[6] No objection was raised in the trial court calling attention to the alleged inconsistencies of issues 7 and 9 dealing with the question of discovered peril, and whether or not a proper look out was maintained. If error, it was invited by appellant and cannot now have the case tried upon a different theory than was presented in the trial court. There is no such error presented or shown upon this issue harmful to appellant or should cause a reversal of the judgment.

[7] It is contended that the judgment should be reversed on the alleged ground of the misconduct of the jury. There is no evidence to support this contention. When the jury assembled to discuss the matter, they desired an opinion of each of the jurors as to any recovery or not on the whole case as a working basis. They all "agreed that

the lady was entitled to damages." Juror Borchelt said he would rather the rest give opinion first, because he knew all about the situation down there and would rather have the opinion of the others before he said anything. He did not tell the rest about it. When he was examined on his voir dire as a juror, he stated that he lived in Mercedes, that he had a creamery right at the crossing where the accident occurred, that he had operated that creamery many years and was very familiar with the situation there at the crossing, and not only that, but that he was at the scene of the accident very quickly after it occurred. He answered these questions before he was accepted as a juror. There is nothing shown that tends to show, misconduct of the jury. If it was, that was the time for the challenge, and objections raising his competency after his statements must be considered, waived, when taking him as one of the jurors. It has not been shown that any juror was improperly influenced thereby so as to bring in an improper or corrupt verdict. Instead of any misconduct of the juror, we think he acted in a straightforward manner, square and honest enough; he having the other jurors express themselves first. He did not talk with any of them or in any way attempt to influence their judgment.

[8] The discussion of the jury among themselves in fixing the amount of the verdict to prevent an appeal by appellant, while appellant may think it improper, is not such misconduct as to invalidate their verdict; besides, if shown excessive, could be reduced by this court. They may have thought if placed at a nominal amount there would be no appeal. If that were the reason, no injury would perhaps follow to appellant. It was in the interest of appellant to have a small recovery.

[9] We have so often said that the argument in good faith addressed to each other to secure a verdict is of no consequence when the jurors finally conclude and reach a verdict which they all approve. A mere illogical reason given for a verdict that is supported by the testimony will not affect it. Germane to this question in G., H. & S. A. Ry. Co. v. Pingenot, 142 S. W. 95, Chief Justice Fly, in writing the opinion for this court, said:

"If verdicts are to be set aside on account of the unfounded vagaries and impertinent conversation of jurors, none would be safe, and every trial would be followed by an arraignment and trial of the jury. The statute under which jurors are permitted to detail every trivial act and idle word in the jury room is an insatiate consumer of time and patience of courts and a prolific breeder of trouble; its only saving clause being the investiture of the trial judge with discretion in the granting of new trials on the ground of improper conduct of the jury. This court will not interfere with that discretion when soundly and reasonably exercized."

[10] We cannot agree with appellant that the verdict of $42,500 is excessive. Mrs. Chas. L. Cole testified that she was the widow of Chas. L. Cole; that they had been married 16 years prior to Cole's death, during which time Mr. Cole had followed various occupations; that during the year next preceding his death he was engaged in the insurance business and had earned during that year $3,500; that they had three children, Charles Lee, Jr., who was 7 years of age, William J., who was 3½ years of age, and A. Wayne, who was 18 months of age, all of whom were living and being supported by Chas. L. Cole up to the time of his death. Mr. Cole was an industrious and intelligent man and was a sober man, and during the 16 years of their married life she never knew of him drinking. He was an economical man, and he spent a good deal of time with his family and children. He devoted quite a bit of his time to the instruction of his children, physical and intellectual.

[11] Appellant challenges the court's charge in defining "negligence" as something that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the circumstances. We do not think it erroneous for having used the words "reasonable prudent person," instead of "an ordinarily prudent person." Taylor, B. & H. R. Co. v. Warner (Tex. Civ. App.) 60 S. W. 442; H. & T. C. Ry. Co. v. Everett (Tex. Civ. App.) 86 S. W. 18.

Appellee urges the objection to appellant's propositions Nos. 10 and 11 that an objection to an ordinance based upon the ground that, "inasmuch as there is no proof as to its passage, and the evidence offered here is insufficient to show the fact that the purported copy he has is the ordinance of the city of Mercedes," did not amount to an objection that the ordinance had not been published, and the assignment of error predicated upon such objection ought not to be considered.

[12, 13] The original ordinance was offered in evidence by the city secretary, who testified he was its custodian, and it was in use in the city of Mercedes and enforced since the 21st day of July, 1921. Mercedes is a duly incorporated city. The ordinance was properly established by proof; no issue was submitted to the jury in respect to the ordinance.

The appellant's negligence did not rest entirely upon the ordinance. The jury found that the rate of speed that the train was traveling at the time of the collision was 12 miles per hour and that it was guilty of negligence in so traveling at the time.

It is a sound proposition of law that where there are several grounds of negligence found by a jury, any one of which would entitle the plaintiff to a judgment, the verdict should be sustained, notwithstanding there may have been committed errors

with reference to other grounds of negligence proven. The jury found that there was no flagman stationed at the crossing with reference to trains approaching from the south side, which was a dangerous crossing, which failure under the circumstances constituted negligence.

An examination and consideration of all of appellant's propositions and assignments convinces us that no error apparent from the record has been committed by the trial court. The case seems fairly tried, and the judgment is affirmed.