**TEXAS & N. O. R. CO. v. STEVENS et al.***
(No. 3588.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 11, 1928.

Rehearing Denied Dec. 20, 1928.

---

*Writ of error granted.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, and Guinn & Guinn, of Jacksonville, for appellant.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellees.

HODGES, J. In June, 1927, Henry Grady Stevens was killed in the performance of his duties as a switchman in the yards of appellant at Jacksonville, Tex. The facts show that at the time of his death Stevens was engaged, with two other switchmen, Woodman and Tucker, in placing some freight cars on a spur track. There was standing on an adjacent spur track a flat car loaded with logs. One of the stakes, or standards, used to hold the logs on the flat car was leaning out toward the adjacent spur track on which Stevens and his crew were to place the freight cars. While descending from the car on which he was riding as it passed the car loaded with logs, Stevens was struck by the leaning standard, thrown under the wheels of the freight car, and fatally injured. This suit was filed by the widow, children, and mother of Stevens, for the resulting damages. The widow sued as administratrix of the estate of her deceased husband and in her own right, as well as in the capacity of next friend for her minor children.

The negligence charged is, in substance, permitting the car with a crooked or leaning stake, or standard, to remain in close proximity to the spur track used by Stevens and his crew, without giving them warning or notice of the presence of the car and the condition it was in. It is also charged that the peril of Stevens was discovered in time to have avoided the injury if ordinary care had been exercised to stop the train, lessen its speed, or give warning. Plaintiffs asked for judgment in the sum of $100,000.

The case was submitted on special issues, and the following is, in substance, the jury findings so far as material to the consideration of the errors assigned in this appeal: (1) That the condition brought about by the leaning of the stake, or standard, on the car loaded with logs, was the result of negligence on the part of the defendant and its agents. (2) That such negligence was a proximate cause of the death of Stevens. (3) That the defendant's agents failed to warn Stevens of the situation and position of the stake, or standard, and that the failure to give that warning was negligence, and such negligence was a proximate cause of the death of Stevens. (4) That defendant's agents discovered, immediately prior to the injury, the condition and position of the stake on the car of logs and the danger of injury to Stevens, and that by the exercise of ordinary care on their part the injury could have been avoided by warning him of such condition and danger, or by stopping or arresting

the speed of the engine. (5) That the failure to give such warning or take the precautions above described was negligence and a proximate cause of the death of Stevens. (6) That Stevens was not guilty of contributory negligence.

The jury assessed the aggregate damages at $47,500, apportioned as follows: To Mrs. Stevens, widow of the deceased $15,000; to Francis Louise Stevens, a minor daughter, $15,000; to Henry Grady Stevens, Jr., a minor son, $17,500.

Among the errors assigned are some which challenge the sufficiency of the evidence to support the finding of the jury on the issue of discovered peril. Counsel for appellant contend that the evidence did not warrant a submission of that issue. Rowbarts, appellant's fireman, testified in part as follows: "Mr. Stevens was on the end nearest the engine of the middle car. I did not observe any intention on the part of Stevens to get down off the car until we were within about six to ten feet of the stake that struck him. As close as from here to you, possibly. As to his position when I specifically noticed him, he was sitting on the rear of the middle car, facing away from the car. In other words, he was sitting sideways to the parallel length of the car, with his left hand on the grab-iron and the right hand he had his lantern on the edge of the car, with his feet on—I don't know whether it was on the first or second grab-iron—the first, I believe. Then the next thing I observed, when he got within about a short distance of the stake and he just swung his body around and with his right hand brought his lantern around to catch the top grab-iron, the one right at the top of the car, and when he did his body swung out and projected from the car; just natural movement in swinging off the top of the car; when he did that I saw the stake would strike him and hollered at the engineer to stop, and before the brakes took effect the stake had struck him and brought him around the end of the car he was riding, and I saw his feet go down and broke his hold aloose on this grab-iron, and saw his feet whirling under this car, and knew we had him and went about twenty or thirty feet and the engine came to a stop. When we were coming up there looking up the track, in a general way I could see that car of logs. As to whether I did or could see that the standards were too close to the train on which we were working before I did see it, I will say, no closer than lots of them. The stake was out from a perpendicular position all right, and it did not look dangerously close. If it had I would surely have stopped sooner than I did, because it looked like it was going to not strike. I did say that this particular stake was out. If I had realized it was as close as it was, as to whether I could have

stopped the train sooner, I will say, No. Mr. Shook, I would not have stopped under the circumstances, because stakes were lots of times that close and closer than that one. I would not have stopped; but if I had known Grady had not seen this stake, and realized the fact that it would not clear his body to swing out, certainly I would have stopped. The reason that I did not stop was not because I did not appreciate the fact that he had not observed the standard; that was wrong. I thought he realized the nearness of that stake as well as I did, because he was looking in that direction, he was looking, in other words, right toward it; possibly he was not looking at the stake and never realized how close that stake was to him. Undoubtedly that is true, or else he would never have swung his body out. If I had known that he had not seen and appreciated the danger, I don't know that I could have given him warning in time to have prevented him being struck. I guess that if I had realized that the stake was as close as it was, and had known that he was going to swing out at that particular place, I would have stopped."

The testimony is, we think, sufficient to warrant the submission of that issue and to support the finding of the jury thereon. It is apparent from that testimony of Rowbarts that his failure to sooner stop the engine was because he thought Stevens saw the stake and realized the danger, not because witness did not have time to stop after discovering the actual situation. Other testimony shows that the engine could have been stopped within a distance of from 6 to 10 feet. But even if it could not have been stopped within that distance, or before Stevens collided with the stake, it is inferable from the evidence that the fireman might have given Stevens some kind of warning of the approaching danger. Stevens was not so far away from the fireman that he could not have heard the latter's voice. The jury also had a right to conclude that the engineer could have reduced the speed of the engine so that the danger resulting from a collision with the stake would have been lessened, if not averted.

However, we are of the opinion that the evidence was ample to support the findings of the jury upon the other issues of fact submitted by the court. The proof showed that the car with the leaning standard was placed on the track on Saturday before the Monday on which the injury occurred. Tucker, one of the switchmen, testified that Irvin, appellant's yard foreman, whose duty it was to remove such dangers, saw the leaning standard on Sunday before the injury and spoke of the danger it created. The jury therefore had a right to conclude that appellant's agents had timely notice of the existence of the danger to which Stevens was exposed in performing his duties on that occasion.

Complaint is made of the manner in which the court submitted the issue of contributory negligence. We have examined the charge and do not think it subject to the objections made. Over the objection of the appellant the witness Rowbarts testified as follows: "There was a custom or a habit on the part of the crews handling these cars, to tell the crew which followed them about the unsafe condition of cars they put on this mill track. Nobody told me or Mrs. Stevens or Mr. Woodman either that this particular car was in there and unsafe." Counsel for defendant objected to that statement, on the ground that it was hearsay in so far as it related to what had not been told to Stevens. It is contended that the testimony was harmful on the issue of contributory negligence. The testimony was not hearsay, for the reason that the witness did not purport to tell what he had heard; he simply stated what had not been done. That may have been an inference or a conclusion, but the testimony was not objected to upon that ground.

Objection was also made to the admission of testimony that after the accident appellant's claim agent and other parties in the service of the appellant were seen examining the cars with reference to the stake, and were taking pictures and making measurements. The objection was based upon the fact that these things occurred subsequent to the accident, and that a subsequent investigation could not be shown for the purpose of proving negligence. We think the testimony, if erroneously admitted, was harmless.

The objections made to the remarks of counsel in his opening argument we think are without merit, and the assignments presenting those objections are overruled.

The most serious question presented in this appeal relates to the amount of the recovery. The evidence shows that Stevens was about 31 years of age and was at that time receiving a salary of $6.16 per day as a switchman. His life expectancy, according to the tables of mortality introduced upon the trial, amounted to approximately 34 years. He left a widow 29 years of age, and two children—one 4 years old, and the other 7. Henry Grady Stevens, Jr., the younger of the two children, had a physical affliction, on account of which a larger percentage of expenditures would probably be required in his behalf than would be required for the older child. That may account for the larger award of damages given to him by the jury.

We are of the opinion that the judgment was excessive, and have concluded that it should be reduced at least $10,000. If the appellees shall within 15 days from this date

file a remittitur of $10,000, the judgment will be affirmed; otherwise it will be reversed and the cause remanded for a new trial.