**TEXAS & P. RY. CO. v. GILLETTE.**
No. 2668.

Court of Civil Appeals of Texas. El Paso.
May 12, 1932.

Rehearing Denied June 9, 1932.

---

T. D. Gresham and R. S. Shapard, both of Dallas, Shropshire & Bankhead, of Weatherford, and S. N. Russell, of El Paso, for appellant.

Chas. Owen, H. T. Moore, and R. L. Holliday, all of El Paso, for appellee.

WALTHALL, J.

On August 1, 1931, between 8 and 9 o'clock at night, while Ralph E. Gillette, the husband of Eveline Gillette and father of the minor children Ralph E., Jr., Kitty Virginia, and Thomas Bryan Gillette, was riding in an automobile north on Cotton avenue, one of the streets in the city of El Paso, Tex., a string of some thirty cars, while being operated and pushed by the employees of appellant railway company into and over Cotton avenue, collided with said automobile with such force and violence that said Ralph E. Gillette was thereby crushed and mangled and from which injuries so received he died within a few minutes thereafter.

Eveline Gillette, as the surviving wife of Ralph E. Gillette, individually, and as the next friend, and for the use and benefit of her said minor children, brought this suit against the appellant, Texas & Pacific Railway Company, and the Texas & New Orleans Railroad Company for damages alleged to have been sustained by her individually and by said minor children by reason of the death of Ralph E. Gillette. The Texas & New Orleans Railroad Company was dismissed from the suit on the hearing of the evidence, and the case was submitted to the jury on the issues made by the pleadings and the evidence between appellees and appellant. The issues tendered by the pleading of the parties are sufficiently reflected by the issues submitted to the jury.

The negligence assigned as proximately causing the death of Ralph E. Gillette, and submitted on a preponderance of the evidence, on special issues, and on which findings were made, not stating the verbiage of the issue submitted and the defensive issues on the part of appellant, are substantially as follows:

(1 and 2) Failure of the operatives of the train to keep such lookout for vehicles passing over and along Cotton avenue as a person of ordinary prudence would have kept under the same or similar circumstances; and such failure to use such ordinary care was a proximate cause of the collision in question.

(3, 4, and 5) Failure to have a flagman with a lighted lantern go upon such crossing sufficiently in advance of the train to warn of the approach of such train; such failure to have such flagman was negligence, and a proximate cause of the collision in question.

(6 and 7) Negligence on the part of appellant to proceed across Cotton avenue, under the circumstances, without having a flagman on the front end of the leading car, and such negligence was a proximate cause of the collision in question.

(8, 9, and 10) At the time and immediately before attempting to cross Cotton avenue, appellant failed to have a light on the front of the leading car; such failure was negligence, and such negligence was a proximate cause of the collision in question.

(11) The jury found against appellee on the issue of discovered peril, and made no finding on other issues relating to discovered peril.

(14) The deceased, Gillette, "before attempting to proceed across Cotton Avenue," did not fail to keep such a lookout for his own safety as a person of ordinary prudence would have done under the same or similar circumstances.

(16) At the time of, or just preceding, the collision in question, deceased, Gillette, was not driving his automobile at a rate of speed in excess of twenty miles per hour.

(18) On the occasion in question, the deceased, Gillette, was not intoxicated.

(20) Said Gillette did not fail to look and

listen for an approaching train before attempting to drive his automobile over said crossing.

(23) "Under all the facts and circumstances in evidence, the failure of the said Gillette to stop, look and listen before attempting to make said crossing was not negligence on his part."

(25) Appellees "suffered pecuniary damage as a result of the death of the said Gillette."

(26) If paid in cash now, the sum of $45,-000 would reasonably and fairly compensate the appellees for the "pecuniary damages" resulting to the appellees on account of the death of the said Gillette. In connection with that issue the court instructed the jury that they would take into consideration only the pecuniary damages, if any, which appellees sustained as a result of the death of the said Gillette, and would not allow anything for loss of companionship or as a solace for grief.

(27) In answer to the question, "How should the damages, if any, be apportioned between the plaintiffs?" the jury found: To Mrs. Eveline Gillette, $18,000; Ralph E. Gillette, Jr., $8,000; to Kitty Virginia Gillette, $9,000; to Thomas Bryan Gillette, $10,-000.

On special defensive issues submitted by appellant the jury found:

(1a) The deceased was not driving his automobile at an excessive and dangerous rate of speed as he approached and attempted to drive the same upon said crossing.

(5a) The deceased was not driving his automobile at such rate of speed as to cause same to be beyond his control as he approached and attempted to drive across appellant's railroad tracks on the occasion in question.

(11a) There was not sufficient space between the end of the railroad car upon the crossing and the opposite side of the street for "defendant" (evidently meaning Gillette) to have driven his automobile around the end of such car in safety.

On motion of appellees the court entered judgment in their favor, as found by the jury.

Appellant duly prosecutes this appeal.

Opinion.

Appellant submitted to the court a charge instructing a verdict in its favor. The court refused to give such charge and submitted the case on special issues as in the above statement.

Appellant complains of the refusal of the court to give such requested charge and submits such refusal as reversible error.

■■ Appellant makes the contention that the uncontroverted evidence shows the facts to be directly contrary to the facts found by the jury on the issues submitted; that the approach of the appellant's train of cars as it backed into Cotton avenue was plainly visible and audible; that Gillette, deceased, voluntarily drove his automobile at a dangerous and unlawful rate of speed against the railroad car, and appellant reasons from what it submits the evidence to be that Gillette, deceased, was guilty of contributory negligence as a matter of law.

It becomes necessary to state the evidence sufficiently to determine whether it is such as to take the case to the jury, and sustain the findings made. The evidence is voluminous and we will state briefly extracts therefrom on the points involved in the proposition.

Harvey Brown, a witness, was riding in the automobile with Gillette at the time of the accident. In answer to questions, questions not copied, witness said: "We got in the car (at Bourland's Garage) and backed out on Cotton Avenue. We started off across Texas (street) in low gear. After we got across Texas he (Gillette) throwed into second, and then after we got up there I noticed him looking on both sides. Then I looked myself then, and after we got on those tracks, I noticed we was on some railroad tracks. We went on a while and I noticed we passed the last gate up there. He slowed up for that street there. We went across the street then, and when we got up there I noticed him looking on both sides again, then I looked. When I turned back around again to look again, then I seen a train on us. It was right on us. From the time we left Texas Street, after we backed out, Mr. Gillette was driving that car from fifteen to twenty, not over twenty. We slowed down at the intersection of this street on Cotton Avenue, and he was not going over fifteen then. I looked forward. I did not see any light in the street on Cotton Avenue. I did not hear any train coming. I did not see any man in the street with a lantern in his hand. I could have seen him. It was a cloudy, dark night. I know what a fusee is. I did not see a fusee on the track as we struck it. As I turned back and looked to the right there was no man on that car. There was no fusee on that car. There was no man in front of the car on the ground with a lantern in his hand. I did not see a man and a lantern there any place. There wasn't any kind of light on that car as I looked around as it was about to strike us. I did not hear any bell. I did not hear a train whistle. I did not see anybody out there at all with or without a lantern. I did not hear anybody holler. Talked with Gillette at Bourland's Garage, saw nothing out of the ordinary in his conduct. He was perfect. Was close up like men are when they shake hands. Did not detect any kind of liquor on his breath; he did not appear intoxicated or drinking. He did not drive

like a drunken man; he had control, he drove perfect all the time. Have known him eight years and have ridden with him before; he was a good driver. Did not know what happened after the collision for an hour and a half or two hours; was then at Hotel Dieu. Had never been on this street before (Cotton Avenue). * * * I did not see any gates on the tracks where the collision occurred; did not see any wig-wag sign; did not see any electric bell there; there wasn't any there. It rained that day. We found some water on the street, we slowed down for it. At no time did the car go at such speed that all four wheels left the ground. Mr. Gillette was driving the automobile perfectly. Did not have anything to drink at Bourland's any time. Saw no liquor there nor with Gillette."

R. K. Rogers testified: By questions and answers witness said: Lives down the valley; is in the railroad mail service; was near the point of the collision between an automobile and a train on Cotton avenue on August 1st, 1931; was going north on Dallas street; was at the intersection of Dallas and Cotton; it runs at an angle across there; a car passed me and I got on across the street when I heard this crash across Cotton. As witness came up Dallas he had a view of the tracks on Cotton avenue and Dallas street. Was familiar with the locality. Was looking both directions for these crossings on Cotton. Just before this collision witness did not see any train. Did not see any flagman with a lantern in his hand, or anybody in that street; did not see any fusee of any kind at any time at any point on Cotton, or before witness got to Cotton; did not see any man on the front car; witness thinks he could have seen him if he had had a light; had there been a fusee on that car witness could have seen it if it was lighted.

Witness said: "When I heard the collision I looked in that direction. I did not see a man with a light there on the street at that time. I did not see a man on the car (railroad). I couldn't hardly see any object at all until I got back and turned my light. It was a very dark night. As I looked I couldn't see any train. I looked up toward the lick or sound and I turned around and put my lights on the car (automobile) that was wrecked. When I got back there there wasn't anybody in the street with a lantern. I was the first one there. I never heard a bell. From the time I looked until I turned around I did not see any man on the ground. They were in plain view if there had been any there. I got out as quick as I could. I walked all around. I did not see any fusee there. I did not see any fusee smoking there. I did not smell any fumes of a burning fusee when I came up to the car. I was close enough to smell if there was any. I did not hear any street bell that night. I did not hear any bell on the loco-

motive. There is so many whistling in along there that I cannot answer whether I heard a whistle. I didn't hear any after I got up close though. I did not hear anybody holler that night. If there had been a light here I would have seen it. If there had been a fusee on that car I would have seen it long before I got here, I would have noticed the fusee. I could see for half a mile or more. If that car had projected out in the street halfway across and it was on the end I could have seen it. I got close enough to Mr. Gillette that I spoke to him; I tried to raise his head a little. I did not smell any character of liquor on his breath. I was right over him."

Several other witnesses testified more or less in corroboration of the evidence quoted to the effect that no light was on the front end of the car or tank entering the street, nor was there a man with a light in front of the car entering the street.

There is evidence in the record to the effect that a man was on the front end of the tank car as it entered the street, that a fusee was on the front end of the tank car, and that a man with a lighted lantern in his hand was on the street in front of the train as it backed into the street, and hollered at Gillette as his automobile approached the place of the collision, at the time of the collision. The rule is well established, however, in this state, that in passing upon the question presented in the proposition, that is, the sufficiency of the evidence to take the case to the jury, this court will consider only the evidence tending to sustain the action of the trial court in submitting the case to the jury, and the finding of the jury on the issues submitted.

As we view the record before us, the evidence is not uncontroverted on the facts submitted in the proposition, and the court was not in error in submitting the case to the jury.

■ The court charged the jury: "The proximate cause of an injury is that cause which, in a natural and continuous sequence, unbroken by any new independent cause, produces the injury and without which the injury would not have occurred and from which it ought to have been foreseen or reasonably anticipated by the party producing same, in the exercise of ordinary care, that the injury complained of, or some similar one would result naturally and probably in the light of the attending circumstances. By any new and independent cause is meant such a cause as interrupts the natural sequence of events, turns aside their course and prevents the natural and probable results of the original act or omission and produces a different result that could not have been reasonably anticipated in the light of the attending circumstances."

Appellant complains that, in submitting the issue of proximate cause of an injury, the court used the expression, "a natural and continuous sequence, unbroken by any new, independent cause," and that the court failed to define to the jury what the court meant by such expression; that the charge on proximate cause of an injury without a proper definition of such term or expression is vague, indefinite, and confusing, and assumes the jury understands the meaning of such expression.

The court explained and defined the term used in the charge, "any new, independent cause," but did not define the expression, "natural and continuous sequence."

Appellant's objection is to the whole expression, "a natural and continuous sequence, unbroken by any new independent cause," and not specifically to the undefined part, "natural and continuous sequence." Does the omission to define "natural and continuous sequence" render the charge defective or erroneous? If it is so considered, does the objection sufficiently call the court's attention to the specific defect or omission? It is well settled that, upon proper objection made to the court to a defect or omission in the charge, it becomes the duty of the court to correct the defect or supply the omission. The objection here points out an omission as to definition to a part of which the court had already given, or which the court gave after objection made. The objection to the specific defect or omission of definition now made was not brought to the attention of the court, and we doubt that it is now available as reversible error, should the expression used, "natural and continuous sequence," be deemed a legal term requiring definition, where the court in connection with that term properly defined "any new, independent cause," a technical term, which would break the "sequence" and be properly understood, and applied by the jury in passing upon the facts all that seems to be required in the holding of the Supreme Court in Gulf, etc., Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183. But, should it be held that the objection was sufficient to call the court's attention to the want of a sufficient definition of "natural and continuous sequence," we think the court's definition of "any new and independent cause" was sufficient, though in the definition the court uses the expression "natural sequence of events." The point is overruled.

■ Appellant, in its third proposition, insists that, in submitting the issue of appellant's failure to keep a proper lookout for vehicles passing along Cotton avenue, it submitted an issue not sufficiently raised by the evidence. We have carefully reviewed the evidence, have quoted extracts from it in discussing a former proposition, and have con-

cluded that the evidence is amply sufficient to require a submission of the issue.

For the same reason as given in passing upon the third proposition, we overrule appellant's several propositions immediately following, all insisting that the evidence is insufficient to justify the submission of the issue to which they severally refer, or that the preponderance of the evidence is against the finding. We need not discuss the propositions severally. The evidence is amply sufficient to take the issues to the jury.

■ The seventh proposition claims fundamental error in the court's failure to instruct on the proper measure of damages governing recovery on the part of Eveline Gillette and the minor children, and failing to explain to the jury the manner of arriving at the amount of such damages. It is insisted that such explanatory charge is mandatory.

On the issue the court charged:

"Question No. 25: Do you find from a preponderance of the evidence that plaintiffs suffered pecuniary damages as a result of the death of the said Gillette? Answer yes or no."

"If you answer yes to the foregoing question, then, but not otherwise, answer this additional question:

"Question No. 26: What sum do you find from a preponderance of the evidence, if paid in cash now, would reasonably and fairly compensate the plaintiffs for the pecuniary damages, if any, resulting to the plaintiffs on account of the death of said Gillette?

"In connection with this question you are charged that you are only to take into consideration the pecuniary damages, if any, which the plaintiffs sustained as a result of the death of the said Gillette. You will not allow anything for loss of companionship or as a solace for grief.

"If you have found it necessary to answer the foregoing, then, but not otherwise, answer this additional question:

"Question No. 27: How should the damages, if any, be apportioned between the plaintiffs?"

The jury answered severally the questions submitted.

We think the charge is not affirmatively erroneous. If error, it is of omission. Appellant submits the matters pointed out as showing fundamental error, and says the reading of the court's charge will show the error, and, the error being fundamental in its nature, it was not necessary for appellant to have criticized or objected to it on the trial, and the objections now made are now presented for the first time.

On our statement that the charge of the court is not affirmatively erroneous, we cite H. & T. C. R. Co. v. Davenport (Tex. Civ.

App.) 110 S. W. 150. The same case is again discussed in 102 Tex. 369, 117 S. W. at page 792. We have concluded, as is said in that case, and in Parks v. San Antonio Traction Co., 100 Tex. 225, 94 S. W. 331, 98 S. W. 1100, that positive error is not shown, but, if anything, only an indefiniteness, in the language used, which could have been cleared up by a special charge consistent with it, which was not done.

■ The objections now urged not having been presented in the trial court are waived. St. Louis S. W. Ry. Co. of Tex. v. Ewing (Tex. Com. App.) 222 S. W. 198, where it is held that the objection then urged not having been taken in the trial court must be considered waived, citing Gulf, T. & W. Ry. Co. v. Dickey, 108 Tex. 126, 134, 187 S. W. 184. In Alderete v. Cabello (Tex. Civ. App.) 278 S. W. 950, this court, speaking through Judge Higgins, said: "As to all objections to the court's charge raised for the first time in this court and submitted as fundamental error, it is sufficient to say that under the present statute all objections to a charge must be called to the attention of the court below. All objections not so made and presented must be considered as waived." To the same effect is Jagoe Construction Co. v. Harrison (Tex. Civ. App.) 28 S.W.(2d) 232, by the Texarkana court. In Luling Oil & Gas Co. v. Edwards (Tex. Civ. App.) 32 S.W.(2d) 921, by the Austin court, it is held that objections to the court's charge, in order to be available, must be urged by seasonable objections, and therefore cannot be brought within the doctrine of fundamental error.

Appellant tendered several special charges which the court refused to give, and the refusal of the court is made the basis of several assignments and propositions thereunder. An inspection of the record discloses that the issues tendered had been sufficiently submitted in the court's main charge.

■ By its eighteenth proposition it is submitted that the verdict is excessive and not the result of fair deliberation.

The verdict is large, but the pecuniary damage to appellees is also large.

The record shows that appellee, Eveline Gillette, and the deceased had been married eight years, and that during the marriage relation the earnings of the deceased averaged about $45 per week. The evidence shows that deceased was an automobile mechanic of exceptional ability, and during normal times his earning capacity would be at least $60 per week. At times he had earned more than $200 per week. He was thirty-three years old, and the ages of the three children, respectively, were seven, five, and three.

We cannot say that the verdict and judgment is excessive. Beaumont, S. L. & W. Ry. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320; R. G., E. P. & S. F. Ry. Co. v. Dupree (Tex. Civ. App.) 35 S.W.(2d) 809; Freeman v. McElroy (Tex. Civ. App.) 126 S. W. 657; G., H. & S. A. Ry. Co. v. Mitchell, 48 Tex. Civ. App. 381, 107 S. W. 374; G., H. & S. A. Ry. Co. v. Wells (Tex. Civ. App.) 15 S.W.(2d) 46; Hines v. Mills (Tex. Civ. App.) 218 S. W. 777; Houston E. & W. T. Ry. Co. v. Sherman (Tex. Civ. App.) 10 S.W.(2d) 243; St. Louis, B. & M. Ry. Co. v. Cole (Tex. Civ. App.) 4 S.W.(2d) 1019; Southwest Power Co. v. Price, 180 Ark. 567, 22 S.W.(2d) 373; T. & N. O. R. Co. v. Crow (Tex. Civ. App.) 300 S. W. 93; T. & N. O. R. Co. v. Stevens (Tex. Civ. App.) 15 S.W. (2d) 200; T. & N. O. R. Co. v. Harrington (Tex. Civ. App.) 241 S. W. 250.

■■ Error is assigned to the overruling of appellant's motion for a new trial on the ground of newly discovered evidence.

A comparison of the evidence given on the trial by the witnesses Hudson, Brown, Allen, and others, with the statements of the witnesses Kyle and Barry, the newly found witnesses, discloses that the newly discovered evidence is cumulative; all the witnesses had about the same point of view; the newly discovered witnesses were parts of another crew in the railroad yards, and we think diligence to secure their testimony is not shown. As we view it, the newly discovered evidence is of the same kind and character and to the same point as that of other witnesses of appellant who testified to the presence of the fusee on the front end of the tank car, and the presence of appellant's switchman flagging the street crossing with a white light, and the presence of one of appellant's switchmen with a white light on the top of the car next to the tank car, at the time of the collision. A party may not by newly discovered evidence duplicate his testimony. The matter of a new trial for newly discovered evidence is largely within the discretion of the trial court.

We think the record shows no reversible error on account of misconduct of the jury; nor does the record show that the jury returned a quotient verdict. We have carefully reviewed the record, and find no reversible error.

The case is affirmed.